This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Elliott Cherry has appealed from a judgment order of conviction and sentence from the Summit County Court of Common Pleas finding him guilty of child endangering in violation of R.C. 2919.22(B)(1) and murder in violation of R.C. 2903.02(B). This Court affirms.
 I
On the evening of May 1, 2001, Appellant was at the apartment of his girlfriend, Jocola Martin. Appellant was alone at the apartment with Ms. Martin's thirteen-month-old son Elijah Kimbrough and Appellant's one and one-half-year-old daughter Zorrie;[1] Ms. Martin had gone to work earlier in the evening. At approximately 10:21 p.m., 911 dispatchers received a call from Appellant. Appellant told the dispatchers that Elijah had fallen down a stairway and had stopped breathing. Emergency medical technicians and police officers responding to the call converged at the apartment. Elijah was rushed to Children's Hospital, where he was pronounced dead at 11:10 p.m.
Two days later Appellant was indicted on one count of murder, in violation of R.C. 2903.02(B) with the predicate offense of felonious assault; felonious assault, in violation of R.C. 2903.11(A)(1); and endangering children, in violation of R.C. 2919.22(A). A supplemental indictment was filed three months later charging Appellant with murder, in violation of R.C. 2903.02(B) with the predicate offense endangering children; and endangering children, in violation of R.C. 2919.22(B)(1).
Appellant filed a motion to suppress oral statements made to police officers, which the trial court ultimately denied after a hearing on the matter. Appellant also filed motions to dismiss both counts of the indictment charging Appellant with felony murder because of various alleged constitutional infirmities, which the trial court also denied after a hearing. Appellant's jury trial commenced on August 20, 2001.
At trial, Officer Aey testified that he was one of the officers who was dispatched to the apartment from which Appellant had placed the 911 call. Officer Aey stated that he spoke with Appellant after the medical personnel had taken Elijah to the hospital, and that at that time Appellant related to him the following sequence of events: Appellant was doing laundry in the lower level of the apartment when he a heard a "thud." Appellant went to the stairway, and found Elijah at the second or third step from the bottom. The infant gasped as Appellant took Elijah in his arms and carried him up the stairs, and Appellant told him to breathe. When they reached the top of the stairs, Appellant set the child down and telephoned his mother and 911. According to Officer Aey, Appellant reported that Elijah had a history of falling down steps, and had fallen down the steps of the third level stairway earlier in the day.
Sergeant Hudnall of the Akron Police Department also testified at Appellant's trial. Sergeant Hudnall stated that he was another of the officers who responded to Appellant's 911 call, and interviewed Appellant at the apartment. The Sergeant testified that Appellant told him that Elijah had fallen down the steps of the basement stairway while he was doing laundry.
The state also presented testimony from Detective Hamas of the Akron Police Department. Detective Hamas testified that he arrived at the apartment while Sergeant Hudnall was talking to Appellant. Detective Hamas stated that Appellant voluntarily agreed to accompany him to the police station to give a statement to the police. The Detective testified that he and Detective Vincent Benson questioned Appellant in an interview room at the detective bureau, where Appellant repeated his account of Elijah's fall down the basement steps. After the interview, Detective Benson took Appellant home.
Detective Benson was the state's next witness at the trial. Detective Benson's description of what Appellant told the detectives during the interview at the detective bureau matched the account given by Detective Hamas. In addition, Detective Benson stated that Appellant agreed to return to the police station with Ms. Martin the following day at noon.
The next day, Appellant and Ms. Martin came back to the police station for further questioning. After the detectives interviewed Ms. Martin, Appellant was brought to the interview room. Detective Benson testified that Appellant was voluntarily in the interview room, and was free to leave. Present in the interview room with Appellant was Detective Benson, Detective Dalvin Horton, and assistant city prosecutor Tom Dicaudo. Detective Benson then testified to the following sequence of events: After Appellant repeated his account of Elijah's fall down the stairs, one of the interviewers interjected that the coroner had informed them that Elijah's injuries were not caused by a fall down the stairs, but by a blunt force trauma to the abdomen. At some point during the questioning, the interviewers placed in front of Appellant a picture of Elijah's open abdominal cavity taken during the child's autopsy. The picture showed multiple tears in the infant's liver. Upon seeing the photograph, Appellant dropped his head and said that "his life was over." Appellant admitted that the children had been irritating him, and that he had "backhanded Elijah in the stomach" one time. The detectives then told Appellant he was under arrest, and Detective Horton was asked to read Appellant his Miranda rights. Detective Benson retrieved a tape recorder from his desk, and Detective Horton explained to Appellant that with his permission, they were going to tape record Appellant's confession. Appellant agreed, and the detectives asked Appellant to repeat what he had previously told them. Detective Horton read Appellant his Miranda rights, and Appellant repeated his confession on tape. The tape of Appellant's confession was admitted into evidence at the trial, and was played for the court and the jury.
Dr. Lisa Kohler, Chief Medical Examiner of Summit County, also testified at the trial. Dr. Kohler stated that she performed an autopsy on Elijah's body, which revealed two large tears in the infant's liver, lacerations in the membrane holding the bowels in place, and subdural bleeding. According to Dr. Kohler, the tears in the liver were the result of a deeply penetrating blow administered with significant force from an object with a small surface area, such as a fist or a heel. Dr. Kohler testified that the cause of Elijah's death was blood loss due to blunt force injury to the abdomen. The doctor stated that the child's fatal injuries could not have been caused by a fall down the steps.
The jury found Appellant not guilty of felonious assault and not guilty of murder with the predicate offense of felonious assault, but guilty of child endangering and guilty of murder with child endangering as the predicate offense. The trial court sentenced Appellant to serve eight years in prison for child endangering and fifteen years to life for murder. Appellant has timely appealed from his convictions and sentence, asserting four assignments of error.
 II Assignment of Error Number One "[APPELLANT'S] CONVICTION FOR MURDER UNDER R.C. 2903.02(B) VIOLATED HIS DUE PROCESS AND EQUAL PROTECTION RIGHTS AS GUARANTEED BY SECTIONS 2 AND 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTIONS (MOTION HEARING, AUGUST 10, 2001)."
In his first assignment of error, Appellant has argued that his conviction for felony murder violated his federal and state constitutional guarantees of due process and equal protection of the laws. Appellant has purported to attack the constitutionality of Ohio's felony murder statute both on its face and as applied to his case. "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." Holeton v. Crouse CartageCo., 92 Ohio St.3d 115, 139, 2001-Ohio-109, (Cook, J., dissenting), quoting Women's Med. Professional Corp. v. Voinovich (C.A.6, 1997),130 F.3d 187, 193.
The Equal Protection Clauses of the United States and Ohio Constitutions have been construed as "functionally equivalent" provisions, necessitating the same analysis. Am. Assn. of Univ.Professors, Cent. State Univ. Chapter v. Cent. State. Univ.,87 Ohio St.3d 55, 59, 1999-Ohio-248. Courts determining whether legislation violates state or federal equal protection guarantees apply different levels of scrutiny to different types of classifications. SeeState v. Williams, 88 Ohio St.3d 513, 530, 2000-Ohio-428. Where, as here, the statute at issue does not involve a suspect class or a fundamental constitutional right, the legislative distinction is constitutionally valid if it bears a rational relationship to a legitimate state interest. Id. Under the rational basis test:
 "[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. A rational relationship will exist under rational-basis review if the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational[.]" (Citations and quotations omitted.) Univ. Professors, 87 Ohio St.3d at 58.
 "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Heller v. Doe (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257, quoting Lehnhausen v. Lake Shore Auto Parts Co. (1973), 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351.
The Ohio Supreme Court has also stated:
 "Under the Ohio Constitution, an enactment comports with due process if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary. Federal due process is satisfied if there is a rational relationship between a statute and its purpose." (Quotations and citations omitted.) Fabrey v. McDonald Police Dept., 70 Ohio St.3d 351, 354, 1994-Ohio-368.
Appellant's attack on the constitutionality of R.C. 2903.02(B) consists of four components. This Court will address each in turn.
 A. "R.C. 2903.02(B) is unconstitutional because it fails to require that the underlying felony in a murder conviction be independent from the conduct which kills."
Appellant has first argued that R.C. 2903.02(B) is unconstitutional because it fails to adopt the independent felony, or merger, doctrine recognized by some courts, legislatures, and scholars. According to this doctrine, only crimes that are independent of the conduct which kills can serve as the predicate offenses for felony murder. Appellant has argued that in his case, the acts constituting child endangering were the same acts that constituted a necessary part of the homicide — to wit, Elijah's death. Consequently, Appellant has contended, the charge of child endangering should have merged into the homicide and precluded the state's prosecution of Appellant for felony murder. Appellant has argued that the Ohio statute's failure to recognize the merger doctrine resulted in the capricious, unreasonable, and arbitrary elevation of the charge against him to murder for alleged conduct that historically would have been prosecuted as involuntary manslaughter.
Appellant was convicted of felony murder pursuant to R.C. 2903.02(B), with a conviction for child endangering in violation of R.C. 2919.22(B)(1) as the predicate felony offense. R.C. 2903.02(B), which became effective June 30, 1998, provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" R.C. 2919.22(B) provides:
 "No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
"(1) Abuse the child[.]"
R.C. 2919.22(E)(2)(d) states that a violation of R.C. 2919.22(B)(1) which results in serious physical harm to the victim is a felony of the second degree. R.C. 2901.01(A)(9) provides that a violation of R.C. 2919.22(B)(1) is an offense of violence.
This Court agrees that in adopting R.C. 2903.02(B), the General Assembly rejected the independent felony/merger doctrine. Appellant has failed to demonstrate, however, that this legislative decision does not bear a rational relationship to a legitimate state interest.
In rejecting an argument identical to the one raised by Appellant, the First District Court of Appeals noted the limitations on the offenses that can serve as predicate felonies under R.C. 2903.02(B) and stated:
 "The General Assembly has thus narrowly defined the scope of felony murder under R.C. 2903.02(B), and related it to the legitimate purpose of punishing the taking of human life while committing a separate offense of violence. Only eleven first- and second-degree offenses may serve as predicate offenses under this statute. Voluntary and involuntary manslaughter may not." State v. Pickett, 1st Dist. No. C-000424, 2001-Ohio-4022, at 6, appeal not allowed (2002), 94 Ohio St.3d 1508.
The Eleventh District Court of Appeals also found R.C. 2903.02(B) constitutional in spite of the statute's failure to incorporate the merger doctrine, concluding that "it is a legislative prerogative to provide what form or forms of the felony-murder rule it wishes to implement as long as the statutes enacted are otherwise within constitutional parameters." State v. Hayden (July 14, 2000), 11th Dist. No. 99-L-037, 2000 Ohio App. LEXIS 3198, at *13-14, appeal not allowed (2001), 91 Ohio St.3d 1522.
This Court agrees with the reasoning of Pickett and Hayden, and finds that neither R.C. 2903.02(B) nor Appellant's conviction for felony murder where the predicate offense was not independent of the conduct that killed Elijah are in violation of equal protection or due process guarantees. Appellant's first argument is without merit.
 B. "R.C. 2903.02(B) is unconstitutional because felonies which are not inherently dangerous to human life can be used as the underlying felony in a murder conviction."
In his second argument, Appellant has contended that R.C. 2903.02(B) is unconstitutional because it permits felonies that are not "inherently dangerous to human life" to serve as predicate felony offenses. After carefully reviewing the record, however, this Court finds that Appellant failed to raise this argument in the court below. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue * * * and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, syllabus. Accordingly, we decline to address further the second component of Appellant's first assignment of error.
 C. "R.C. 2903.02(B) is unconstitutional because it relieves the State of the burden of proving the offender "purposely" took the life of the victim."
In his third argument, Appellant has averred that R.C. 2903.02(B) is unconstitutional because it allows the state to obtain a conviction for felony murder without having to prove a purposeful intent to kill. According to Appellant, the lack of a mens rea element in Ohio's felony murder statute permits a defendant to be charged with murder for conduct which would have traditionally been prosecuted as involuntary manslaughter.
Ohio courts addressing this argument have rejected Appellant's reasoning on the basis that the state still must prove the mens rea element by proving intent to commit the predicate felony. In Hayden, supra, the Eighth District Court of Appeals concluded:
 "Under the common law approach, R.C. 2903.02(B) does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony. At common law, `malice aforethought' was ascribed to a felon who killed another in the perpetration of an inherently dangerous felony such as rape, robbery, or burglary. Specifically, under the common law rule, the United States Supreme Court recognized that `prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the state proves intent to commit the underlying felony.' Hopkins v. Reeves (1998), 524 U.S. 88, 91-92, 118 S.Ct. 1895, 141 L.Ed.2d 76. Thus, several states have found that felony-murder statutes pass constitutional muster regarding the mens rea issue because those statutes require the state prove the intent of the underlying felony." Hayden, supra at *12.
This Court has specifically adopted the foregoing rationale in Statev. Smathers (Dec. 20, 2000), 9th Dist. No. 19945, at 5-6, appeal not allowed (2001), 91 Ohio St.3d 1509. Appellant has urged us to find thatSmathers is not controlling in the instant case because Appellant was convicted of child endangering, for which the mens rea element is "recklessly." See R.C. 2901.22(B). The appellant in Smathers, by contrast, was convicted of felonious assault in violation of R.C.2903.11(A)(1), which includes a mens rea element of "knowingly."
This Court is not aware of any appellate cases addressing a defendant's conviction for murder under the current version of R.C. 2903.02(B) based solely upon a predicate offense with a mens rea of "recklessly." After careful review of the statutory provisions at issue, however, we conclude that Appellant's conviction for murder based on a predicate felony with a mens rea of "recklessly" did not violate his constitutional rights.
In the instant case, the trial court instructed the jury on the following definition of "recklessly:"
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or be of a certain nature. A person is reckless with respect to circumstances when with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
The trial court's instruction with respect to the count of child endangering charged the jury that in order to find Appellant guilty, it must find that Appellant "did recklessly abuse the child resulting in serious physical harm to a child."
R.C. 2903.02(B) evidences a clear legislative intent to subject those who commit the most serious felonies to liability for murder, where commission of those felonies results in death. Where commission of child endangering in violation of R.C. 2919.22(B)(1) results in serious physical harm to the child victim, the violation is a felony of the second degree and thereby becomes included in the class of eligible R.C.2903.02(B) predicate felonies. R.C. 2919.22(E)(2)(d); R.C. 2903.02(B). The consequence of this statutory scheme is to subject one who causes serious physical harm to a child through an act of reckless abuse to prosecution for murder, where the death of the child is a proximate result of such abuse.
In light of the legislature's clear desire to punish under R.C.2903.02(B) those who proximately cause the death of children by acts of reckless abuse, we find no merit to Appellant's argument that his constitutional rights were violated by predicating his conviction on a felony with a mens rea of "recklessly." The state was still required to prove that Appellant perversely disregarded a known risk that his conduct was likely to cause a certain result or be of a certain nature when he abused Elijah, and that Elijah died as a proximate result of the abuse. Giving due deference to the legislature's evident solicitude for the protection of children, we conclude that proof that Appellant "recklessly" abused Elijah was sufficient to establish the requisite culpable mental state to convict Appellant of murder as proscribed by R.C. 2903.02(B). See Hayden and Smathers, supra. Appellant's third argument is without merit.
 D. "R.C. 2903.02(B) is unconstitutional because it violates equal protection by giving prosecutors' [sic] undue discretion in charging since murder under R.C. 2903.02(B) and involuntary manslaughter under R.C. 2903.04 prohibit identical activity and subject offenders to different punishment."
In his fourth argument, Appellant has contended that his conviction for murder violates his constitutional right to equal protection of the laws because R.C. 2903.02(B) and R.C. 2903.04 (involuntary manslaughter) prohibit identical conduct, yet subject offenders to different penalties. Appellant has argued that the offenders prosecuted under each statute constitute classes of similarly situated defendants who are treated differently based on distinctions that are not rationally related to a legitimate government interest.
Appellant has directed us to State v. Wilson (1979), 58 Ohio St.2d 52, in which the Ohio Supreme Court stated that the issue under such an equal protection challenge is "whether both statutes require the state to prove identical elements while prescribing different penalties." Id. at 55. According to Wilson, "if the statutes prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause." Id., at 55-56.
Appellant's equal protection argument has been rejected by numerous Ohio appellate districts on the ground that additional elements must be proven to obtain a conviction for felony murder. Specifically, it has been held that:
 "[T]o be convicted of felony-murder, one must have committed or attempted to commit an offense of violence that is a felony of the first or second degree whereas the involuntary manslaughter statute only requires that the offender have committed or attempted to commit any felony. There is no requirement [for an involuntary manslaughter conviction] that the felony was one of violence or that it was of the first or second degree." (Emphasis sic.) State v. Miller (June 29, 2001), 11th Dist. No. 99-CA-0078, 2001 Ohio App. LEXIS 2967, at *11, appeal not allowed (2001), 93 Ohio St.3d 1476. See, also, State v. Dixon, 2nd Dist. No. 18582, 2002-Ohio-541, at 7-8; State v. Miller, 8th Dist. No. 79949, 2002-Ohio-2257, at ¶ 37.
In addition, it has been determined that:
 "Felony murder carries a higher penalty than involuntary manslaughter because the harm involved in committing the underlying offense is greater; an offense of violence that is a felony of the first or second degree, versus any felony. Thus, R.C. 2903.02(B) bears a rational relationship to a legitimate governmental interest, protecting the safety of citizens." Dixon, supra at 8. See, also, State v. Bowles (May 11, 2001) 11th Dist. No. 99-L-075, 2001 Ohio App. LEXIS 2145, at *23, appeal not allowed (2001), 93 Ohio St.3d 1412. Accordingly, Appellant's fourth argument is not well taken.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN NOT SUPPRESSING [APPELLANT'S] STATEMENTS MADE TO THE AKRON POLICE DEPARTMENT WHEN, UNDER THE TOTALITY OF THE CIRCUMSTANCES, DURING A POLICE INTERROGATION, A REASONABLE PERSON WOULD NOT HAVE BELIEVED HE WAS FREE TO LEAVE, THE INTERROGATING LAW ENFORCEMENT OFFICERS ARE REQUIRED TO GIVE A SUSPECT THE WARNINGS REQUIRED BY MIRANDA V. ARIZONA (1966), 384 U.S. 436."
In his second assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress certain statements he made to police. Appellant has contended that he was under arrest prior to the time the statements were made, and he therefore should have been read the warnings required by Miranda before he confessed to the police.
In reviewing a trial court's decision on a motion to suppress, this Court accepts the factual determinations of the trial court if they are supported by competent, credible evidence. State v. Curry (1994),95 Ohio App.3d 93, 96. "However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." Id. In the proceedings below, however, the trial court made no factual findings in connection with its order denying Appellant's motion to suppress. Accordingly, this Court relies on the testimony transcribed from the hearing and the undisputed facts that are supported by the record in determining whether the trial court reached the proper result.
The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. Pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 471-472, 86 S.Ct. 1602,16 L.Ed.2d 694, an individual must be advised of his constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his freedom in any significant way. Once police begin a custodial interrogation, they must use procedures to warn the person in custody of his right to remain silent and his right to counsel. Id.
The duty to provide Miranda warnings is only invoked when both custody and interrogation coincide. State v. Wiles (1991), 59 Ohio St.3d 71, 83, certiorari denied (1992), 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59. "Custody" for purposes of entitlement to Miranda rights exists only where there is a restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517, 77 L.Ed.2d 1275. Whether a suspect is in such custody depends on the facts and circumstances of each case. State v. Warrell (1987),41 Ohio App.3d 286, 287. The test to be applied to each case is "whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" State v. Gumm,73 Ohio St.3d 413, 429, 1995-Ohio-24, quoting United States v.Mendenhall (1980), 446 U.S. 544, 554, 64 L.Ed.2d 497, 100 S.Ct. 1870
(plurality opinion).
Appellant has contended that he was in custody at the time he gave to the detectives his first, untaped confession that he struck Elijah in the stomach. According to Appellant, the detectives communicated to him their subjective beliefs concerning his guilt and truthfulness prior to Appellant's initial admission. As a result, Appellant has contended, a reasonable person in Appellant's position would not have believed that he was free to leave, and the detectives were therefore required to advise Appellant of his Miranda rights.
Generally, the subjective intent of the law enforcement officer and the subjective belief of the defendant have no bearing on the determination of whether a defendant is in custody. Berkemer v. McCarty (1984),468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317, 336. Rather, the relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the defendant's position would have believed that he was not free to leave. Id. However, Appellant has cited Stanbury v.California (1994), 511 U.S. 318, 324-325, 114 S.Ct. 1526,128 L.Ed.2d 293, for the proposition that an officer's views concerning the nature of the investigation or his beliefs regarding the culpability of the defendant may be one of the factors relevant to assessing whether the defendant was in custody. Such subjective beliefs may only be relevant, under the terms of Stansbury, when they are somehow communicated to the defendant and would have affected how a reasonable person in the defendant's position would perceive his freedom to leave. Id.
In the case at bar, we cannot conclude that the trial court erred in determining that, under the totality of the circumstances, a reasonable person in Appellant's position would have believed that he was free to leave. Detective Benson testified at the suppression hearing that after he drove Appellant home from the police station on the night of Elijah's death, he asked Appellant to return with Ms. Martin to the station on the following day at noon. Detective Benson testified that Appellant came to the interview on his own, and that no physical force was used at any time during the interview. The interview took place in a conference room at police headquarters. According to Detective Benson, both he and Detective Horton told Appellant at the interview that he was free to leave, and that he was not under arrest. The detective stated that Appellant was free to leave at any time prior to his confession, and that the detectives would have let Appellant go if he had started to leave or communicated a desire to leave the interview.
Detective Benson did testify that he did not believe Appellant's story at the interview in question and told Appellant that his account was inconsistent with the findings from Elijah's autopsy. We cannot conclude, however, that this communicated sentiment transformed the interview into a custodial one which would trigger the detectives' duty to issue Appellant Miranda warnings. "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." Stansbury,511 U.S. at 525. Considering the totality of the circumstances, it is clear that Appellant was not in custody at the time he gave his first confession to the detectives. See State v. Pudelski (Mar. 15, 2001), 8th Dist. No. 77172, 2001 Ohio App. LEXIS 1150, at *22-23, appeal not allowed (2001), 92 Ohio St.3d 1445. Moreover, it is undisputed that once Appellant stated that he struck Elijah in the stomach, he was formally placed under arrest and properly read his Miranda rights. Appellant's second assignment of error is without merit.
 Assignment of Error Number Three "THE TRIAL COURT ERRED IN SENTENCING [APPELLANT] FOR CHILD ENDANGERING AND MURDER BECAUSE THOSE CRIMES CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSES OF ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION. (SEPTEMBER 5, 2001, JOURNAL ENTRY)."
In his third assignment of error, Appellant has argued that the trial court erred in sentencing Appellant for child endangering and for murder. Appellant has contended that these crimes constitute allied offenses of similar import, and that the trial court's imposition of sentences for both crimes twice put Appellant in jeopardy in violation of his federal and state constitutional rights.
The transcript of the sentencing hearing reveals that the trial court stated:
 "I believe we all are in agreement that the only sentence possible here is one of life, that will be 15 years to life imprisonment and that the various counts would merge. * * * It would be the Court's opinion that the child endangering merges with the murder charge for the one sentence of 15 to life. * * * As indicated earlier, there is one sentence that's available to the Court, that is the sentence of 15 years to life imprisonment."
Appellant's trial counsel then interjected: "Judge, for the record you will be running the Child Endangering concurrent?" The trial court responded: "I've indicated that it's the opinion of the Court that that charge will merge, and I'm not sure that there is any need to impose the 8 year sentence, but just so the record will be clear, there won't be any error, the Court will do that." The trial court's journal entry includes sentences of eight years for child endangering and fifteen years to life for murder to be served concurrently, but also ordered that "these sentences are concurrent for the reason that they are MERGED for purposes of sentencing; as agreed to by all parties."
As the sentences were merged by the trial court, as noted by the trial court multiple times at the sentencing hearing and in the journal entry, there is no error for this Court to address. Appellant's third assignment of error is not well taken.
 Assignment of Error Number Four "THE TRIAL COURT ERRED IN DECLINING TO INSTRUCT THE JURY ON THE LESSER INCLUDED/LESSER OFFENSE OF INVOLUNTARY MANSLAUGHTER TO MURDER, IN VIOLATION OF [APPELLANT'S] RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (TR. VOL. VI AT 692)"
In his fourth assignment of error, Appellant has argued that the trial court erred in denying his request to instruct the jury on involuntary manslaughter. Appellant has contended that involuntary manslaughter is a lesser included offense of murder under R.C. 2903.02(B), and that the trial court's failure to so instruct the jury violated his right to due process of law under the United States Constitution.
Whether a jury instruction is necessary or correct is a question of law which we review de novo if the trial court's decision is not based upon its sound discretion to determine whether the evidence presented at trial is sufficient to require that the instruction be given. State v. Lessin
(1993), 67 Ohio St.3d 487, 494, certiorari denied (1994), 510 U.S. 1194,114 S.Ct. 1300, 127 L.Ed.2d 652. The determination of whether the evidence presented at trial is sufficient to require that a requested instruction be given, however, will not be disturbed on appeal absent an abuse of the trial court's discretion. State v. Wolons (1989),44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id., quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157. In reviewing jury instructions, an appellate court must examine the specific instruction at issue not in isolation, but in the context of the entire jury charge. State v.Thompson (1987), 33 Ohio St.3d 1, 13.
The Ohio Supreme Court set forth the analysis for determining whether one criminal violation is a lesser included offense of another in Statev. Deem (1988), 40 Ohio St.3d 205:
 "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Id. at 206, paragraph three of the syllabus.
Appellant requested the trial court to instruct the jury on the offense of involuntary manslaughter, which is proscribed by R.C. 2903.04(A): "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Appellant requested that the jury also be instructed, for the underlying felony, on the offense of endangering children in violation of R.C. 2919.22(A), which provides:
 "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *."
When Appellant's requested instruction is examined as a whole, it is clear that the underlying felony on which Appellant requested the jury instruction, R.C. 2919.22(A), is not a lesser included offense of either of the predicate felonies with which Appellant was charged. Appellant was charged with endangering children in violation R.C. 2919.22(B)(1) and felonious assault in violation of R.C. 2903.11(A)(1). Those statutes provide:
 "No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
"(1) Abuse the child[.]" R.C. 2919.22(B)(1).
"No person shall knowingly do either of the following:
 "(1) Cause serious physical harm to another[.]" R.C. 2903.11(A)(1).
Proceeding with the first prong of the Deem test, involuntary manslaughter carries a lesser penalty than murder under R.C. 2903.02(B). Involuntary manslaughter is a first-degree felony punishable by a maximum prison term of ten years. R.C. 2903.04(C); R.C. 2929.14(A)(1). Murder under R.C. 2903.02(B) is punishable by a prison term of fifteen years to life. R.C. 2929.02(B).
Under the second prong of Deem, however, the offense of felony murder with R.C. 2919.22(B)(1) or 2903.11(A)(1) as the predicate felony can be committed without the offense of involuntary manslaughter with R.C.2919.22(A) as the predicate felony also being committed. This Court has previously held that "commission of [R.C. 2919.22(A)] will not automatically result in commission of [R.C. 2919.22(B)]. A person can breach a duty of care without torturing or abusing the child, and aperson can abuse a child without breaching a duty of care." (Emphasis added.) Smathers, supra at 14. Similarly, one can knowingly cause serious physical harm to another or another's child without breaching a duty of care imposed by law. Consequently, the charge of involuntary manslaughter as requested by Appellant was not a lesser included offense of murder in violation of R.C. 2903.02(B) with a predicate felony of endangering children in violation of R.C. 2919.22(B)(1) or felonious assault in violation of R.C. 2903.11(A)(1). Nor were the offenses on which Appellant requested an instruction inferior degrees of the charges that went to the jury, as the elements of child endangering in violation of R.C. 2919.22(A) are not incidental to or contained within R.C. 2919.22(B)(1) or R.C.2903.11(A)(1) except for an additional mitigating element. See Deem, supra at paragraph two of the syllabus.
Moreover, a defendant is entitled to a jury instruction on a lesser included offense only "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89, 107 L.Ed.2d 54. "In making this determination, the court must view the evidence in the light most favorable to the defendant." State v. Smith, 89 Ohio St.3d 323, 331,2000-Ohio-166, citing State v. Wilkins (1980), 64 Ohio St.2d 382, 388. Nevertheless, "some evidence" that the elements of the lesser included offense might be satisfied is not enough; sufficient evidence must be presented which would allow a jury reasonably to reject the greater offense and find the defendant guilty of the lesser included offense.State v. Shane (1992), 63 Ohio St.3d 630, 632-633.
We conclude that the trial court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter because the evidence adduced at trial did not support an acquittal on the charge of murder in violation of R.C. 2903.02(B) with a predicate offense of endangering children under R.C. 2919.22(B)(1), and a conviction on involuntary manslaughter as requested by Appellant.[2] The gravamen of child endangering under R.C. 2919.22(A) is neglect in violation of a duty of care, protection, or support. State v. Kamel (1984), 12 Ohio St.3d 306,308-309; State v. Miley (1996), 114 Ohio App.3d 738, 743, appeal not allowed (1997), 77 Ohio St.3d 1548. The elements of R.C. 2919.22(A) include that the defendant was the parent, guardian, custodian, person having custody or control, or person in loco parentis of the child victim, and that the defendant violated a duty of protection, care, or support imposed by law. R.C. 2919.22(A); Miley, supra at 743.
As the state argued when Appellant requested the involuntary manslaughter instruction, the evidence did not support a conviction on child endangering in violation of R.C. 2919.22(A) and an acquittal on child endangering under R.C. 2919.22(B)(1). Dr. Kohler's testimony was uncontroverted that the cause of Elijah's death was blood loss as a result of a forceful blow to the abdomen. According to Dr. Kohler, an object with a small surface area, such as a fist or a heel, administered the blow which severed Elijah's liver and precipitated his death; the infant's fatal injuries could not have been caused by a fall down a stairway. The jury heard Appellant's taped confession, in which he admitted that he struck Elijah in the stomach while he was "a little bit" angry because the children had been acting up. Appellant acknowledged that his anger affected the force he used in striking Elijah. In sum, the evidence at trial was overwhelming that Elijah's death was not the result of neglect or an omission in violation of a duty imposed by law but an act, at least, of reckless abuse. The evidence presented would not have allowed a jury reasonably to reject murder under R.C. 2903.02(B) with a predicate offense of child endangering in violation of R.C. 2919.22(B)(1), and to convict Appellant of involuntary manslaughter with a predicate offense of child endangering in violation of R.C. 2919.22(A). For all of the foregoing reasons, Appellant's fourth assignment of error is without merit.
 III
Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
CARR, P.J., BATCHELDER, J. CONCUR.
[1] Appellant was not the father of Elijah, and Ms. Martin was not the mother of Zorrie.
[2] While Appellant was initially charged with endangering children in violation of R.C. 2919.22(A), that charge was dismissed by the court at the state's request prior to closing arguments (and prior to Appellant's request for an involuntary manslaughter instruction).