**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 55.]**

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, CENTRAL STATE UNIVERSITY CHAPTER, APPELLEE AND CROSS-APPELLANT, *v.* CENTRAL STATE UNIVERSITY, APPELLANT AND CROSS-APPELLEE.

[Cite as *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ*., 1999-Ohio-248.]

*Education—State universities—Faculty workload policies—Classification contained in R.C. 3345.45 does not violate the Equal Protection Clause of the Ohio Constitution—R.C. 3345.45 is a valid exercise of legislative authority under Section 34, Article II of the Ohio Constitution.*

1.    The classification contained in R.C. 3345.45 does not violate the Equal Protection Clause of the Ohio Constitution because it is rationally related to a legitimate government interest.

2.    R.C. 3345.45 is a valid exercise of legislative authority under Section 34, Article II of the Ohio Constitution.

(No. 97-568—Submitted August 25, 1999—Decided October 20, 1999.)

UPON REMAND from the United States Supreme Court.

————————————

{¶ 1} Effective July 1, 1993, the General Assembly enacted R.C. 3345.45 to address its concern over the decline in faculty teaching hours at Ohio's public universities. That section provides:

"On or before January 1, 1994, the Ohio board of regents jointly with all state universities, as defined in section 3345.011 of the Revised Code, shall develop standards for instructional workloads for full-time and part-time faculty in keeping with the universities' missions and with special emphasis on the undergraduate learning experience. These standards shall contain clear guidelines for institutions to determine a range of acceptable undergraduate teaching by faculty.

"On or before June 30, 1994, the board of trustees of each state university shall take formal action to adopt a faculty workload policy consistent with the standards developed under this section. Notwithstanding section 4117.08 of the Revised Code, the policies adopted under this section are not appropriate subjects for collective bargaining. Notwithstanding division (A) of section 4117.10 of the Revised Code, any policy adopted under this section by a board of trustees prevails over any conflicting provisions of any collective bargaining agreement between an employees organization and that board of trustees."

{¶ 2} Also enacted as part of Am.Sub.H.B. No. 152 was Section 84.14, uncodified, which provides:

"Pursuant to section 3345.45 of the Revised Code, the Ohio Board of Regents shall work with state universities to ensure that no later than fall term 1994, a minimum ten per cent increase in statewide undergraduate teaching activity be achieved to restore the reductions experienced over the past decade. Notwithstanding section 3345.45 of the Revised Code, any collective bargaining agreement in effect on the effective date of this act shall continue in effect until its expiration date." 145 Ohio Laws, Part III, 4539.

{¶ 3} Pursuant to the standards in R.C. 3345.45, appellant and cross-appellee, Central State University ("CSU"), adopted and later amended a new faculty workload policy. That policy provided:

"The normal full-time teaching load will be a range of 36 to 40 contact hours per academic year. The normal teaching load in any quarter will not exceed 15 contact hours. Faculty members shall have at least ten office hours distributed over the five day work week."

{¶ 4} CSU then notified the certified collective bargaining agent for full-time faculty members at CSU, the American Association of the University Professors, Central State University Chapter ("AAUP"), that, in accordance with R.C. 3345.45, it would no longer bargain over the issue of faculty workload. In

response, AAUP filed a complaint for declaratory judgment and injunctive relief and a motion for a preliminary injunction pursuant to Civ.R. 65(B), alleging that R.C. 3345.45 violated the Equal Protection Clauses of the Ohio and United States Constitutions, and Section 1, Article I of the Ohio Constitution.

{¶ 5} The trial court held R.C. 3345.45 constitutional in its entirety. AAUP appealed that decision to the Second District Court of Appeals, which reversed the trial court's judgment and concluded that the statute was unconstitutional.

{¶ 6} Upon appeal and cross-appeal to this court, we were asked to determine the constitutionality of R.C. 3345.45 under the Equal Protection Clauses of both the United States and Ohio Constitutions, as well as under Section 34, Article II of the Ohio Constitution. A majority of this court held that R.C. 3345.45 violated the Equal Protection Clause under either Constitution, as it did not rationally relate to a legitimate government interest. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1998), 83 Ohio St.3d 229, 699 N.E.2d 463 ("*AAUP I*"). The *AAUP I* majority based this conclusion upon the state's failure to provide any evidence of a link between collective bargaining and a decline in teaching. Because the *AAUP I* majority determined that the statute was unconstitutional under those clauses, it did not reach the issue of constitutionality under Section 34, Article II of the Ohio Constitution.

{¶ 7} The United States Supreme Court reversed *AAUP I* to the extent that it held the statute unconstitutional under the United States Equal Protection Clause. *Cent. State Univ. v. Am. Assn. of Univ. Professors, Cent. State Univ. Chapter* (1999), 526 U.S. 124, 119 S.Ct. 1162, 143 L.Ed.2d 227 ("*Central State*"). The United States Supreme Court emphasized in *Central State* that *AAUP I* misapplied federal rational-basis review by requiring the state to provide evidence of a rational relationship between the statute and its goal. The Supreme Court held that R.C. 3345.45 rationally relates to the statute's legitimate goal and therefore survived the federal equal protection challenge. The Supreme Court then remanded this case for

further proceedings consistent with its opinion.

_____

*Benesch, Friedlander, Coplan & Aronoff, L.L.P., Donald J. Mooney, Jr.,* and *Mark D. Tucker,* for appellee and cross-appellant.

*Betty D. Montgomery*, Attorney General*, Edward B. Foley,* State Solicitor*, pro hac vice, Lawrence J. Miltner* and *Jan A. Neiger*, Assistant Attorneys General*,* for appellant and cross-appellee.

*Snyder, Rakay & Spicer* and *Peter J. Rakay,* for *amicus curiae* Ohio Education Association.

_____

**COOK, J.**

{¶ 8} This case returns to us for consideration of R.C. 3345.45's constitutionality under Section 2, Article I and Section 34, Article II of the Ohio Constitution.

Equal Protection

{¶ 9} To avoid duplication, we begin our equal protection analysis of R.C. 3345.45 by restating several of the conclusions reached by a majority of this court in *AAUP I.* These conclusions remain applicable to our Ohio analysis, and the parties have acknowledged their validity by omitting them from the scope of their arguments:

(1) the classification created by R.C. 3345.45 is subject to *rational-basis scrutiny*;

(2) the inquiry under the rational-basis test is whether the statute is *rationally related to a legitimate government interest*;

(3) the goal of R.C. 3345.45 — to effect a change in the ratio between faculty activities in order to correct the imbalance between research and teaching at four-year undergraduate state institutions — *serves a legitimate state interest*.

{¶ 10} Accordingly, the sole issue remaining for our determination is

whether R.C. 3345.45 *rationally relates* to a legitimate interest under our interpretation of Ohio's Equal Protection Clause. CSU asks us to apply *federal* rational-basis analysis to this issue, while AAUP contends that rational-basis review requires a stricter analysis under our state's Constitution.

**{¶ 11}** Under federal rational-basis analysis, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Communications Comm. v. Beach Communications, Inc.* (1993), 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221. A rational relationship will exist under rational-basis review if "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne v. Cleburne Living Ctr., Inc.* [1985], 473 U.S. [432], 446 [105 S.Ct. 3249, 3257, 87 L.Ed.2d 313, 324]." *Nordlinger v. Hahn* (1992), 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1, 13.

**{¶ 12}** Importantly, a state has no obligation whatsoever "to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257, 271. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, *supra*, 508 U.S. at 315, 113 S.Ct. at 2102, 124 L.Ed.2d at 222. " '[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' " *Heller, supra,* quoting *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351, 358. Furthermore, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because ' "it is not made with mathematical nicety or because in practice it results in some inequality." ' *Dandridge v. Williams* [1970], 397 U.S. [471] 485 [90 S.Ct. 1153,

1161, 25 L.Ed.2d 491, 501-502], quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369, 377] (1911). * * *" Heller, 509 U.S. at 321, 113 S.Ct. at 2643, 125 L.Ed.2d at 271.

{¶ 13} Applying the federal standard to its analysis of R.C. 3345.45, the United States Supreme Court concluded in *Central State* that R.C. 3345.45 bears a rational relationship to the state's intended goal and therefore upheld the statute against equal protection attack. The Supreme Court emphasized that this court's decision in *AAUP I* misapplied the accepted standard of federal rational-basis review by requiring the state to produce evidence of the rational relationship between the statute and its goal. Using the appropriate federal analysis, the United States Supreme Court reasoned that R.C. 3345.45's purpose was to correct the imbalance between teaching and research in Ohio's public universities and that the General Assembly rationally could have concluded that "the policy animating the law would have been undercut and likely varied if it were subject to collective bargaining." *Cent. State,* 526 U.S. at 128, 119 S.Ct. at 1163, 143 L.Ed.2d at 231. The Supreme Court further determined that the state must have considered "the attainment of this goal [to be] more important than the system of collective bargaining that had previously included university professors." *Id*. Such a rationale, the Supreme Court concluded, passed rational-basis review and survived the constitutional challenge. CSU asks us to apply this reasoning to our Ohio constitutional analysis and to uphold the statute as rationally related to a legitimate government interest.

{¶ 14} AAUP, however, maintains that Ohio's Equal Protection Clause is to be construed differently from its federal counterpart. Specifically, AAUP would have us modify the application of the federal test to require *factual evidence* of a rational relationship to a legitimate governmental interest. As a result, AAUP contends that the Supreme Court's decision in *Central State* has no bearing upon the Ohio analysis because Ohio's standard is more stringent. In support of that

argument, AAUP argues that we have recently adopted just that standard. AAUP focuses first upon our use of the following "shred of evidence" language in *AAUP I:* "We have reviewed each of these reports, and all the other evidence contained in the record, and can conclude with confidence that there is not a shred of evidence in the entire record which links collective bargaining with the decline in teaching over the last decade * * *." 83 Ohio St.3d at 236, 699 N.E.2d at 469. AAUP further calls our attention to a similar statement made in *State ex rel. Dayton Fraternal Order of Police, Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 6, 22 OBR 1, 5, 488 N.E.2d 181, 186: "If there is a reason for exempting Dayton employees from the rights enjoyed by all others, then that reason is not contained in the *record* of this case." (Emphasis added.)

{¶ 15} Despite the use of that language, this court has never held Ohio's equal protection standard to be different from that employed under the federal analysis. See, *e.g., Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 544, 706 N.E.2d 323, 332; *Keaton v. Ribbeck* (1979), 58 Ohio St.2d 443, 445, 12 O.O.3d 375, 376, 391 N.E.2d 307, 308, citing *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563; *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 491, 21 O.O.3d 302, 307, 424 N.E.2d 586, 591-592. Notably, even the courts in *Dayton* and *AAUP I* espoused adherence to the federal standard before straying from it in the manner set forth above. For example, the *AAUP I* majority specifically stated that the federal and Ohio Equal Protection Clauses "are functionally equivalent, and the standards for determining violations of equal protection are essentially the same under state and federal law." 83 Ohio St.3d at 233, 699 N.E.2d at 467. In fact, it was under that reasoning that the *AAUP I* court announced its intention to determine the equal protection issues "under both * * * [the Ohio and United States] constitutional provisions as a single question." *Id.* Thus, the *AAUP I* court had no intention of renouncing the federal standard when it suggested that the legislature must provide evidence of a rational

relationship—it simply misapplied that standard.

{¶ 16} This recent confusion concerning the federal standard of rational-basis review should not serve as support for its abandonment in Ohio. The United States Supreme Court's analysis and construction of this standard has evolved over many years of review. It is only one part of a carefully conceived structure of equal protection review, with each section occupying its own place in a larger scheme. Were we to modify this portion of the review in the manner suggested by *AAUP I* and *Dayton* and impose greater judicial scrutiny on classifications under rational-basis review, every other step of the analysis would likewise be disturbed. We see no reason to create such a disturbance when the existing federal standard is workable and exceedingly well reasoned. We affirm, therefore, that the federal and Ohio Equal Protection Clauses are to be construed and analyzed identically. We also specifically set forth that the state has no obligation to produce evidence to sustain the rationality of a statutory classification under Ohio's standard of rational-basis review.

{¶ 17} Having confirmed that Ohio's Equal Protection Clause tracks its federal counterpart, we follow the United States Supreme Court's reasoning in *Central State* and hold that the classification contained in R.C. 3345.45 does not violate the Equal Protection Clause of the Ohio Constitution because it is rationally related to a legitimate government interest.

### Section 34, Article II

{¶ 18} AAUP next challenges the constitutionality of R.C. 3345.45 under Section 34, Article II of the Ohio Constitution. That section provides: "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employe[e]s; and no other provision of the constitution shall impair or limit this power."

{¶ 19} AAUP urges us to construe Section 34 as a restriction upon the General Assembly's authority to pass employee-related legislation. Specifically,

8

AAUP argues that only those laws *benefiting* employees may be enacted, while laws *burdening* employees are unconstitutional as violative of Section 34. Based upon that reasoning, AAUP argues that R.C. 3345.45 is unconstitutional because it burdens rather than benefits employees. We disagree with AAUP's reasoning, as it compels unsound results both in this specific instance as well as in the broader context.

{¶ 20} This court has repeatedly interpreted Section 34, Article II as a broad *grant* of authority to the General Assembly, not as a limitation on its power to enact legislation. See, *e.g.*, *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 14, 539 N.E.2d 103, 114. AAUP's position would require Section 34 to be read as a limitation, in effect stating: "No law shall be passed on the subject of employee working conditions *unless it furthers* the comfort, health, safety and general welfare of all employees." Under that approach, however, Section 34 would prohibit all legislation imposing any burden whatsoever on employees, regardless of how beneficial to the public that legislation might be. The invalidity of this position becomes strikingly apparent when viewed in the context of *existing* employment-related laws.

{¶ 21} The General Assembly routinely enacts legislation that serves precisely the purpose AAUP would have us declare impermissible. R.C. 3319.22, for instance, allows rules imposing continuing education requirements upon teachers; R.C. 109.801 requires police officers to undergo annual firearm training; public employees are limited by R.C. 102.03 in gifts they may receive; and classified employees are limited in their solicitations of political contributions under R.C. 124.57. Furthermore, employees of Head Start agencies and out-of-home child care employees must submit to criminal record checks (R.C. 3301.32 and 2151.86); teachers and other school employees may be required to undergo physical examinations in certain instances at the discretion of school physicians (R.C. 3313.71); an employee who contracts AIDS from a fellow employee has no

cause of action in negligence against his employer (R.C. 3701.249); and board of health employees dealing with solid and infectious waste are required to complete certain training and certification programs (R.C. 3734.02).

{¶ 22} These statutes provide only a few examples of laws burdening employees based upon legislative decisions to regulate the employment sector in the public interest. None of these statutes was enacted to *benefit* employees, but there can be no question that they constitute important legislation that the General Assembly has the constitutional authority to enact.

{¶ 23} R.C. 3345.45 is no different. Here, the state identified a disturbing trend in faculty workload at public universities. As with each of the above statutes, the General Assembly considered this to be a situation where the public interest necessitated legislative intervention. It enacted a law, therefore, to address and modify the existing concern. Jurists may not agree that such a remedy is the best or most effective means of resolving the problem. Nevertheless, the remedy must be upheld unless it constitutes a plain affront to a specific provision of the Constitution.

{¶ 24} We conclude that R.C. 3345.45 does not constitute such an affront to Section 34, Article II. As set forth above, the public's interest in the regulation of the employment sector often requires legislation that burdens rather than benefits employees. Section 34 should continue to be interpreted as a broad grant of authority to the General Assembly to pass such legislation.

{¶ 25} We hold, therefore, that R.C. 3345.45 is a valid exercise of legislative authority under Section 34, Article II of the Ohio Constitution. The judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., concurs in judgment only.

DOUGLAS and RESNICK, JJ., dissent.

January Term, 1999

———————————