DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 THE QUESTION {¶ 1} This case presents one of the classic legal questions: who gets to decide? In this case, the question is who gets to decide whether people unwilling to live in the City of Akron should be employed by the city, the citizens of Akron or members of the Ohio General Assembly.
 {¶ 2} For the past few decades, under amendments to its charter that were adopted by its citizens, Akron has required its employees to live in the city. Currently, Akron requires people it hires into classified positions to agree to become city residents within 12 months and to continue to live in the city for as *Page 2 
long as they are employed by the city. Section 9.48.1 of the Ohio Revised Code, which became effective on May 1, 2006, prohibits political subdivisions from requiring their employees to live within their boundaries.
 {¶ 3} Because Section 9.48.1 conflicts with, and purportedly supersedes, Akron's employee residency requirements, Akron challenged the statute's constitutionality through a declaratory judgment action. Through a separate action, Akron police and firefighter unions sought a declaration that Section 9.48.1 is constitutional and that it supersedes the city's residency requirements. On cross-motions for summary judgment in this consolidated case, the trial court held that Section 9.48.1 is constitutional and that it invalidates Akron's employee residency requirements. This Court concludes that Section 9.48.1 of the Ohio Revised Code is unconstitutional and, therefore, the trial court erred in granting summary judgment to the state and the unions and against the city of Akron.
 BACKGROUND {¶ 4} Section 9.48.1 of the Ohio Revised Code provides, in relevant part, that "no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state." The statute exempts unpaid volunteers, as well as part-time and temporary employees. Section 9.48.1 further authorizes political subdivisions to require emergency response workers to reside within the county or an adjacent county, if the political subdivision adopts a local law or resolution to that effect through the filing of an initiative petition. *Page 3 
 {¶ 5} The city of Akron filed an action for declaratory judgment against the state of Ohio, its governor, and its attorney general, seeking both a declaration that Section 9.48.1 of the Ohio Revised Code is unconstitutional and an order enjoining its enforcement. Akron specifically maintained that Section 9.48.1 infringes upon its right of self-government and that the statute was not enacted pursuant to the General Assembly's authority under Article II Section 34 of the Ohio Constitution to pass legislation "providing for the comfort, health, safety and general welfare" of employees. Akron also sought a declaration that Section 9.48.1 is unconstitutional because it violates other provisions of the Ohio Constitution.
 {¶ 6} The Fraternal Order of Police, Akron Lodge No. 7, and the Akron Firefighters Association, International Association of Firefighters Local 330, AFL-CIO, filed a separate action for declaratory judgment against the city, its mayor, and the state of Ohio through its attorney general, seeking a declaration that the Ohio General Assembly had enacted Section 9.48.1 pursuant to its authority under Article II
Section 34 of the Ohio Constitution. They sought further declaration that Akron's employee residency requirements violate Section 9.48.1 and exceed Akron's home rule authority and, therefore, are unenforceable.
 {¶ 7} The trial court consolidated the two cases and the parties eventually filed cross-motions for summary judgment. The trial court determined that Section 9.48.1 of the Ohio Revised Code is constitutional and that it prevails over *Page 4 
the city's employee residency requirements. It, therefore, granted summary judgment to the state and the unions and denied Akron's motion for summary judgment. The trial court concluded that the Ohio General Assembly enacted Section 9.48.1 pursuant to its authority under ArticleII Section 34 of the Ohio Constitution to pass laws providing for the "general welfare" of employees. Because Article II Section 34 explicitly provides that "no other provision of the constitution shall impair or limit this power[,]" the trial court further held that the constitutional authority of the General Assembly to enact Section 9.48.1 supersedes the city's home rule authority to pass a local employee residency requirement. Consequently, the trial court held that Section 9.48.1 invalidated the city's employee residency requirement. The city has assigned four errors.
 THIS COURT'S STANDARD OF REVIEW {¶ 8} All of the city's assignments of error are challenges to the trial court's granting of summary judgment to the state and the unions and its denial of summary judgment to the city. In reviewing a trial court's order ruling on a motion for summary judgment, this Court applies the same standard the trial court was required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829 (1990). There are no disputed material facts in this case. Rather, the issues presented are legal questions. *Page 5 
 GENERAL WELFARE {¶ 9} By its first assignment of error, the city has argued that the trial court incorrectly rejected its argument that, in adopting Section 9.48.1 of the Ohio Revised Code, the General Assembly was not properly acting within the authority granted it by Article II Section 34 of the Ohio Constitution. Article II Section 34 provides:
 Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power.
 {¶ 10} The parties agree that the General Assembly's authority under Article II Section 34 supersedes the city's home rule authority to pass local legislation. Therefore, if this Court concludes that the General Assembly enacted Section 9.48.1 pursuant to its authority under ArticleII Section 34 of the Ohio Constitution, the state statute prevails and invalidates Akron's local residency requirement.
 {¶ 11} In Rocky River v. State Emp. Relations Bd., 39 Ohio St. 3d 196
(1988) ("Rocky River I"), the Ohio Supreme Court held that the legislative authority under Article II Section 34 did not encompass laws pertaining to public employee collective bargaining rights, but that it was limited to laws pertaining to employee wages and hours. On reconsideration, the Supreme Court reversed its holding six months later and held that the General Assembly's authority under Article II Section 34 encompasses laws pertaining to the general welfare of *Page 6 
employees. Rocky River v. State Emp. Relations Bd, 43 Ohio St. 3d 1
(1989) ("Rocky River IV).
 {¶ 12} In Rocky River IV, the Court's more expansive interpretation of the General Assembly's authority under Article II Section 34 focused on the language "and providing for the comfort, health, safety and general welfare of all employees." The Court applied a basic rule of construction that this phrase must have been included for a reason, indicating a clear intention by the framers to expand the General Assembly's authority under Article II Section 34 beyond wage and hour legislation. Focusing in particular on the term "general welfare," the majority in Rocky River IV held that the Ohio Public Employees Collective Bargaining Act, set forth in Chapter 4117 of the Ohio Revised Code, was enacted within the General Assembly's broad authority under Article II Section 34 of the Ohio Constitution.
 {¶ 13} The majority in Rocky River IV explained that the General Assembly's authority under Article II Section 34 is broad:
 This provision constitutes a broad grant of authority to the legislature to provide for the welfare of all working persons, including local safety forces. The provision expressly states in "clear, certain and unambiguous language" that no other provision of the Constitution may impair the legislature's power under Section 34. This prohibition, of course, includes the "home rule" provision contained in Section 3, Article XVIII.
Rocky River IV at 13 (internal citations omitted, emphasis in original). The Ohio Supreme Court has continued to follow the Rocky River IV
holding that Article II *Page 7 
Section 34 of the Ohio Constitution is a broad grant of authority to the General Assembly to enact laws pertaining to the "general welfare" of employees. See, e.g., American Assoc. of Univ. Professors v. CentralState Univ., 87 Ohio St. 3d 55, 61 (1999).
 {¶ 14} The focus of the parties' dispute is whether the legislative authority to pass laws providing for the "general welfare" of employees under Article II Section 34 includes authority to enact Section 9.48.1 of the Ohio Revised Code, a law that prohibits Akron's existing employee residency requirement. As was noted above, Akron requires applicants for classified positions to agree that, if they are hired, they will become residents of Akron within 12 months and remain Akron residents throughout their employment. No one is disputing that, prior to the effective date of Section 9.48.1, Akron's employee residency requirement was valid and enforceable. The dispute is whether Akron's employee residency requirement is now unenforceable due to the state's enactment of Section 9.48.1.
 {¶ 15} It is the position of the state and the unions that the General Assembly's constitutional authority under Article II Section 34 to pass laws providing for the "general welfare" of employees encompasses the authority to enact Section 9.48.1, which prohibits employee residency requirements by political subdivisions so that employees will have the freedom to choose where to reside. Akron's position, on the other hand, is that the scope of the General *Page 8 
Assembly's authority to pass laws for the general welfare of employees under Article II Section 34 is not without limits and does not extend to this legislation.
 {¶ 16} The majority in Rocky River IV stressed that the language of Article II Section 34 is clear and unequivocal and that "it is the duty of courts to enforce the provision as written." See Rocky River IV,43 Ohio St. 3d at 15. Nonetheless, the focus of dispute in the Rocky RiverI and Rocky River IV was whether Article II Section 34 encompassed employment legislation beyond wages and hours. The majority in RockyRiver IV did not define "general welfare," for it concluded that "the Public Employees' Collective Bargaining Act is indisputably concerned with the `general welfare' of employees." Rocky River IV,43 Ohio St. 3d at 13. It is not so clear, however, whether the legislation at issue in this case pertains to the "general welfare" of employees within the meaning of Article II Section 34.
 {¶ 17} It is a basic rule of construction that words should be given their reasonable, ordinary meaning. In re Adoption of Huitzil,29 Ohio App. 3d 222, 223 (1985). On its face, the term "general welfare" is so broad and vague that it provides no ascertainable limit on the scope of the General Assembly's authority under Article II Section 34. See The Legitimate Objectives of Zoning, 91 Harvard Law Review 1443, 1445 (1978). The meaning of the term "general welfare" "is as incapable of specific definition as is the police power itself." 16A American Jurisprudence 2d, Constitutional Law, Section 363. *Page 9 
 {¶ 18} This, however, does not mean that the phrase "general welfare" as used in Article II Section 34 is without limits. As vague and all-encompassing as the term "general welfare" may appear to be, it cannot reasonably encompass everything that arguably benefits some employees. Without some boundaries on the scope of the term "general welfare," the General Assembly would feasibly have the authority under Article II Section 34 to enact legislation that furthered the interests of a few employees, yet harmed the welfare of the public at large. Moreover, as Article II Section 34 explicitly provides that "no other provision of the constitution shall impair or limit this power," the General Assembly's authority under this provision would be virtually endless and could potentially undermine the home rule authority of municipalities to make any employment decisions.
 {¶ 19} While Article II Section 34 explicitly authorizes legislation for the general welfare of employees, legislation adopted under it must also either secure the blessings of freedom to citizens of Ohio or further the "general welfare" of the state. "All government power derives from the people, but these grants of power are limited." Akhil Reed Amar, The Bill of Rights 123 (Yale University Press) (1998). The scope of the power granted Ohio by its citizens is found in the preamble of the Ohio Constitution:
 We, the people of the State of Ohio, grateful to Almighty God for our freedom, to secure its blessings and promote our common welfare, do establish this Constitution. *Page 10 
As this Court noted in Porter v. City of Oberlin, 3 Ohio App. 2d 158,164 (1964), the Ohio Constitution only authorizes laws that secure freedom for its citizens or further their common welfare:
 It here appears that the Constitution was established to secure the blessings of freedom, and to promote the common welfare. All laws enacted pursuant thereto must be subject to such mandate.
 {¶ 20} In interpreting the General Assembly's broad authority under Article II Section 34, the Ohio Supreme Court has recognized the societal notion of "common welfare." Although the Court has not explicitly articulated a limitation on the General Assembly's authority under Article II Section 34 to enact legislation for the "general welfare" of employees, it has been unnecessary for it to do so in the prior cases before it.
 {¶ 21} The legislation at issue in Rocky River IV, the Ohio Public Employees Collective Bargaining Act, encompassed the entire Chapter 4117 of the Ohio Revised Code, which includes dozens of provisions that burden as well as benefit public employees and public employers, in the public interest. Chapter 4117 includes comprehensive provisions that apply to public collective bargaining units throughout the state, define the scope of collective bargaining rights and obligations, and provide for uniform dispute resolution throughout the state. Chapter 4117 also includes provisions that offer primarily a public benefit such as limitations on the ability of certain public employees to strike and the requirement that records of the state employment relations board be kept public. See Section *Page 11 
4117.15 and 4117.16; Section 4117.17. Moreover, Chapter 4117 did not purport to create collective bargaining rights that did not previously exist, but instead defined the scope of existing rights and obligations of public employees and employers.
 {¶ 22} In an earlier decision by the Ohio Supreme Court, State ex rel.Bd. of Trustees of Pension Fund v. Bd. of Trustees of Relief Fund,12 Ohio St. 2d 105 (1967), the Court determined that Chapter 742 legislation providing for creation, administration, maintenance, and control of a state police and fireman's disability and pension fund was validly enacted within the General Assembly's authority under Article II Section 34. Again, the legislation at issue involved a comprehensive statutory scheme that included over 100 separate provisions and encompassed an entire chapter of the Ohio Revised Code. This legislation likewise did not create employee pension rights that had not previously existed, but sought to preserve and regulate the pension and disability benefits of police and firefighters through the creation and maintenance of a state fund. See Chapter 742.
 {¶ 23} In its most recent decision interpreting the General Assembly's authority under Article II Section 34, the Supreme Court held that "the public's interest in the regulation of the employment sector" includes legislation that burdens as well as benefits employees. AmericanAssociation of Univ. Professors v. Central State Univ.,87 Ohio St. 3d 55, 61-62 (1999). The statute at issue, *Page 12 
Section 3345.45 of the Ohio Revised Code, required public universities to develop standards for professors' instructional workloads and exempted the issue from collective bargaining. The Court made reference to many other employment-related laws enacted under the authority of Article II Section 34, emphasizing that state legislation in the employment area under Article II Section 34 is focused on public interest, not necessarily benefit to the employees. Id.
 {¶ 24} Section 9.48.1 of the Ohio Revised Code, on the other hand, bears no similarity to any of the employee "general welfare" legislation discussed above. The sole purpose of Section 9.48.1 is to invalidate employee residency requirements by political subdivisions. This legislation does not address any significant social issues impacting the public at large; it is not part of a comprehensive legislative scheme, but deals with a single issue; and it applies to a relatively small segment of the population (those who are employed by political subdivisions, are subject to residency requirements, and would choose to live elsewhere if allowed to do so).
 {¶ 25} Further, unlike any of the legislation that the Supreme Court has determined falls within the scope of Article II Section 34 as providing for the general welfare of employees, Section 9.48.1 does not pertain to the protection or regulation of any existing right or obligation of the affected employees. Instead, it is an attempt to circumvent municipal home rule authority and reinstate a "right" *Page 13 
that the employees voluntarily surrendered when they accepted government employment.
 {¶ 26} As the New Jersey Supreme Court stressed when it addressed a challenge to Newark's employee residency requirement as an infringement upon the employees' rights and freedom under its state constitution:
 The question is not whether a man is free to live where he will. Rather the question is whether he may live where he wishes and at the same time insist upon employment by government.
Kennedy v. Newark, 29 N.J. 178, 183, 148 A.2d 473 (1959). The "right" to insist upon employment by government is not a "freedom" within the meaning of the preamble of the Ohio Constitution.
 {¶ 27} Although the parties dispute whether Akron's residency requirement is a condition of or qualification for city employment, it is undisputed that Akron city employees voluntarily agreed to give up their "right" to choose to live elsewhere when they accepted employment with the city. Residency was required by their employer as either a condition of or qualification for employment, "similar in this regard to minimum standards of age, health, education, experience, or performance in civil service examinations." Ector v. Torrance, 10 Cal. 3d 129, 132,514 P.2d 433 (1973). Akron city employees surrendered any "right" that they once had to choose where to live when they agreed to become employees of the city of Akron, just as they may have agreed to other limitations on their personal *Page 14 
freedoms, such as their freedom to dress, groom themselves, or behave as they choose.
 {¶ 28} Laws passed for the "general welfare" of employees do not encompass a single-issue statute that seeks to reinstate a non-fundamental right that the employees voluntarily surrendered when they accepted employment. Applying another fundamental rule of construction, Article II Section 34 should not be interpreted in a manner that would yield an absurd result. See Mishr v. Poland Bd. ofZoning Appeals, 76 Ohio St. 3d 238, 240 (1996). To construe the legislative authority under Article II Section 34 to pass laws providing for the "general welfare" of employees to be so broad as to encompass a law that reinstates a right that employees voluntarily surrendered upon accepting employment would yield an absurd result, and could potentially give limitless power to the General Assembly to undermine all home rule authority of municipalities to make decisions about their employees.
 {¶ 29} Consequently, the trial court erred when it concluded that the General Assembly's enactment of Section 9.48.1 of the Ohio Revised Code was within its authority under Article II Section 34 to pass laws providing for the "general welfare" of employees. The first assignment of error is sustained.
 HOME RULE {¶ 30} Akron's second assignment of error is that Section 9.48.1 is an unconstitutional infringement of its home rule authority to pass local legislation. *Page 15 
It is not disputed that Akron's residency requirement was enacted pursuant to the city's home rule authority.
 {¶ 31} Section 3, Article XVIII of the Ohio Constitution provides:
 Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
— Therefore, Section 9.48.1 of the Ohio Revised Code prevails over the city's residency requirement only if it qualifies as a "general law." InCanton v. State, 95 Ohio St. 3d 149, 2002-Ohio-2005, syllabus, the Ohio Supreme Court announced a four-part test defining what constitutes a general law for purposes of home-rule analysis: "a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally."
 {¶ 32} As explained above, Section 9.48.1 is an attempt by the General Assembly to circumvent the home rule authority of municipalities to maintain residency requirements for their employees. The Third District Court of Appeals recently held, in Lima v. State, 3d Dist. No. 1-07-21,2007-Ohio-6419, at ¶ 80, that Section 9.48.1 of the Ohio Revised Code is not a general law because it "does not set forth police, sanitary, or similar regulations but merely limits the *Page 16 
municipality's power to do the same[.]" It further held that "prohibiting political subdivisions from requiring residency as a condition of employment is not an overriding state interest." Id. This Court agrees.
 {¶ 33} Consequently, Section 9.48.1 of the Ohio Revised Code is not a general law, but violates the city's home rule authority under the Ohio Constitution to enact local employee residency requirements. Akron's second assignment of error is sustained.
 III. {¶ 34} Akron's first and second assignments of error are sustained. The third and fourth assignments of error are moot because of this Court's disposition of the first and second assignments of error and are, therefore, overruled. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded.
Judgment reversed and the cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 17 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellees.
CARR, J. CONCURS