JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Appellant, City of Cleveland, brings this appeal of the trial court's decision granting summary judgment in favor of appellees, the State of Ohio, the Cleveland Police Patrolmen's Association, the Cleveland Firefighters Association Local 93, and the Fraternal Order of Police Lodge 8. The City of Cleveland also appeals the trial court's decision to deny summary judgment in its favor. At issue is whether R.C. 9.481 supersedes the City of Cleveland's home rule authority to enforce its residency requirement for city employees pursuant to City Charter Section 74. After a thorough review of the record and upon consideration of persuasive decisions on this issue in other districts,[1] we reverse and remand.
 Procedural History {¶ 2} On May 1, 2006, the City of Cleveland ("City") filed an action against the State of Ohio ("State") in the Cuyahoga County Court of Common Pleas seeking a declaration that R.C. 9.481 was unconstitutional (Case No. CV-590414). Also on May 1, 2006, in the same court, the Cleveland Police Patrolmen's Association, the Cleveland Firefighters Association Local 93, and the Fraternal Order of Police Lodge 8, and their members (collectively referred to as "Unions") filed a declaratory judgment and taxpayer action against the City, Mayor Frank Jackson, the City's Safety Director, the City's Civil Service Commission, and individual members of the *Page 5 
Civil Service Commission, seeking to have the court hold that R.C. 9.481
was constitutional (Case No. CV-590463). On May 23, 2006, the two cases were consolidated because they both dealt with the constitutionality of R.C. 9.481.
 {¶ 3} On October 16, 2006, all parties to the litigation filed motions for summary judgment, and subsequently all responsive briefs were filed. On February 23, 2007, the court entered its Order-Declaratory Judgment, granting summary judgment in favor of the State and Unions and denying summary judgment to the City, thereby upholding the constitutionality of R.C. 9.481.
 {¶ 4} On February 26, 2007 and March 15, 2007, the City filed Notices of Appeal in Case Nos. CV-590414 and CV-590463, respectively. On March 19, 2007, the two appeals, Case Nos. 89486 and 89565, were consolidated. The City raises five assignments of error for our review. For clarity, we address them out of order.
 Factual Background {¶ 5} In 1912, the Ohio Constitution was amended to provide municipalities with the authority to adopt their own charters. Section 7, Article XVIII states:
 {¶ 6} "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section 3, Article XVIII states: "Municipalities shall have the authority to exercise all powers of self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws." This became known as the Home Rule Amendment. *Page 6 
 {¶ 7} On January 1, 1914, a City Charter became effective in Cleveland. As part of its Charter, Cleveland adopted an "Initiative and Referendum" procedure. On November 3, 1931, Cleveland voters voted to amend the Charter by approving an employee residency requirement. On November 21, 1967, the voters repealed this amendment; however, on November 2, 1982, voters again approved an employee residency requirement through the enactment of City Charter Section 74.
 {¶ 8} Section 74 of the City Charter states in relevant part:
 {¶ 9} "Residency Requirements; Officers and Employees
 {¶ 10} "(a) Except as in this Charter otherwise provided or except as otherwise provided by a majority vote of the Council of the City of Cleveland, every temporary or regular officer or employee of the City of Cleveland, including the members of all City boards and commissions established by the Charter or the ordinances of Cleveland, whether in the classified or unclassified service of the City of Cleveland, appointed after the effective date of the amendment, shall, at the time of his appointment, or within six months thereafter, be or become a bona fide resident of the City of Cleveland, and shall remain as such during the term of his office or while employed by the City of Cleveland."
 {¶ 11} This amendment, as written, has remained the law in the City from the time of its adoption in November 1982 and has applied to all employees hired after its adoption.
 {¶ 12} In 2006, the General Assembly enacted legislation that conflicts with Section 74 of the City Charter. R.C. 9.481(B)(1) states: "Except as otherwise *Page 7 
provided in division (B)(2) of this section, no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state." Division (B)(2) exempts "volunteers," who are defined as any person "who is not paid for service or who is employed on less than a permanent full-time basis." R.C. 9.481(B)(2); see, also, (A)(2). Division (C) states: "[e]xcept as otherwise provided in division (B)(2) of this section, employees of political subdivisions of this state have the right to reside any place they desire." R.C. 9.481.
 {¶ 13} The parties agree that the inherent conflict between City Charter Section 74 and R.C. 9.481 is that which forms the basis of the case before us. These two laws cannot logically and legally coexist.
 {¶ 14} The trial court, in granting summary judgment in favor of the State and Unions, held that "R.C. 9.481 was lawfully enacted by the General Assembly to provide for the general welfare of the employees of Ohio's political subdivisions and is a matter of statewide concern. Section 34, Article II of the Ohio Constitution is the controlling provision, and conflicting local laws passed pursuant to the city's home rule power in Section 3, Article XVIII must succumb to state law, R.C. 9.481 is constitutional and upheld." (Order, Declaratory Judgment, Case Nos. CV-590414 and CV-590463, February 23, 2007.)
 Review and Analysis {¶ 15} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the *Page 8 
standards set forth in Civ. R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 16} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 17} The trial court's decision essentially makes two distinct findings: that R.C. 9.481 was validly enacted under the Ohio Constitution and that, as enacted, it supersedes the City's home rule authority as it relates to Section 74 of the City Charter. We believe that the City's Assignments of Error V and III deal directly with these findings and are dispositive of this case; therefore, we address them first.
 Assignment of Error V {¶ 18} "The trial court erred with its determination that R.C. 9.481
was properly promulgated under Section 34, Article II of the Ohio Constitution." *Page 9 
 {¶ 19} In its fifth assignment of error, the City argues that R.C. 9.481 was not validly enacted under Section 34, Article II of the Ohio Constitution. Specifically, it argues that Section 34 permits the General Assembly to enact laws to improve working conditions, but not to affect a city's authority to establish the qualifications, selection, and appointment of its employees. The State and Unions argue that prohibiting municipal residency requirements is within the purview of Section 34, Article II as being associated with providing for the "general welfare" of all employees.
 {¶ 20} Two appellate courts have recently decided exactly this issue. In City of Lima v. State, Third Appellate No. 1-07-21, 2007-Ohio-6419, and State v. City of Akron, Ninth Appellate No. 23660, 2008-Ohio-38, each respective city was challenging whether R.C. 9.481 was validly enacted so as to supersede each municipality's employee residency requirement ordinance. In both cases, the trial courts had granted summary judgment in favor of the State on this issue. On appeal, both appellate courts reversed the lower court's decisions. We do the same.
 {¶ 21} Section 34, Article II states: "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power." There is no dispute among the parties that Section 34, Article II supersedes a municipality's home rule authority as it relates to validly enacted state legislation. The dispute and this appeal, however, are premised on whether R.C. 9.481 is validly enacted legislation. *Page 10 
 {¶ 22} Whether a statute is constitutional is a question of law reviewed de novo. Wilson v. ACS, Inc., 169 Ohio App.3d 720,2006-Ohio-670, 864 N.E.2d 862. "[A]ll statutes are presumed constitutional, and the party challenging has the burden of proving otherwise" beyond a reasonable doubt. State v. Boczar,113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, citing Arnold v. City ofCleveland (1993), 67 Ohio St.3d 35, 616 N.E.2d 163. "[I]t is not the function of a reviewing court to assess the wisdom or policy of a statute but, rather, to determine whether the General Assembly acted within its legislative power." Austintown Twp. Bd. of Trustees v.Tracy, 76 Ohio St.3d 353, 356, 1996-Ohio-74, 667 N.E.2d 1174.
 {¶ 23} We do not accept any interpretation of R.C. 9.481 to suggest it falls under the language in Section 34 that gives the legislature authority to enact this legislation by relating it to regulating hours or wages; therefore, we focus on whether the General Assembly derives its authority to enact R.C. 9.481 under the "general welfare of all employees" provision.
 {¶ 24} In Rocky River v. State Employment Relations Bd. (1989),43 Ohio St.3d 1, 539 N.E.2d 103 ("Rocky River IV"), the court held that "[t]his provision constitutes a broad grant of authority to the legislature to provide for the welfare of all working persons, including local safety forces. The provision expressly states in `clear, certain and unambiguous language' that no other provision of the Constitution may impair the legislature's power under Section 34. This prohibition, of course, includes the `home rule' provision contained in Section 3, Article XVIII." (Internal citations omitted.) Rocky River IV. *Page 11 
 {¶ 25} The State and Unions argue that this broad grant of authority allows the General Assembly to enact legislation that prohibits residency requirements by municipalities. The City argues that to permit this legislation extends beyond the General Assembly's authority under the general welfare provision.
 {¶ 26} The question before us is whether the general welfare clause extends to the status of being an employee, which transcends any particular locus, or whether it extends to employees acting within the scope of their employment. Since the definition of "employee" as "one who works for another in return for financial or other compensation" does not aid us in determining its commonly accepted meaning, we consider how it is used in the broader context of Section 34 as a whole. See Lima, supra.
 {¶ 27} As noted above, Section 34 contains separate clauses that extend the General Assembly's authority to pass legislation regarding employees' hours and wages. We believe the general welfare clause is to be read consistently with those clauses that regulate matters concerning employees acting within the scope of their employment. Just as the Third and Ninth Districts, we decline to interpret Section 34 to grant the General Assembly virtually limitless authority over municipalities in making employment decisions.
 {¶ 28} Instead, we agree with the court in Lima that "[c]ommon sense dictates that the words `comfort,' `health,' and `safety' relate to working environment conditions" and not to conditions of employment as the State argues. Id. at ¶ 35. We also agree with the recent appellate decisions in the Third and Ninth Districts, which *Page 12 
found that the cases cited by the State are either limited to employee economic welfare or have demonstrated some nexus between their legislative end and the working environment. See Rocky River IV, supra, and State ex rel. Bd. of Trustees of Police Fireman's Pension Fund v.Bd. of Trustees of Police, Pension Fund of Martins Ferry (1967),12 Ohio St.2d 105, 233 N.E.2d 135.
 {¶ 29} R.C. 9.481 is not economic legislation, nor does it have a nexus between its legislative end and the working environment. To uphold it as a valid enactment by the General Assembly would be to extinguish the boundaries between the State's power and a municipality's authority to legislate the relationship between employee and employer. Therefore, we hold that R.C. 9.481 was not validly enacted pursuant to Section 34, Article II of the Ohio Constitution. Appellant's fifth assignment of error is sustained.
 Assignment of Error III {¶ 30} "The trial court erred in ruling that the City's Charter mandated residency requirement must succumb to R.C. 9.481 when the statute is not a `General Law' under Section 34, Article II or for purposes of the General Home Rule Analysis."
 {¶ 31} Having sustained the City's fifth assignment of error, we must address the City's third assignment of error as dispositive of the case. The City argues that the trial court erred in deciding that R.C. 9.481
was a law of "statewide concern that impacts the general welfare of working people." (See Order, p. 6.) *Page 13 
 {¶ 32} We adopt an analysis similar to the courts in Lima andAkron. The critical inquiry here is whether the State has satisfied the three-prong preemption test in City of Canton v. State,95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, to demonstrate that R.C. 9.481
supersedes the City's residency requirement.
 {¶ 33} The Ohio Supreme Court has adopted the three-part test set forth by the appeals court in Canton. A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law.Canton, supra.
 {¶ 34} The parties agree, as do we, that the first prong of the test is easily met. Section 74 of the City's Charter is in conflict with R.C. 9.481. As to the second prong, the parties seem to agree that Section 74 is not an exercise of the police power, but rather of local self-government. We have addressed that separately in the City's second assignment of error (see below). So it is in determining the third prong — whether R.C. 9.481 is a general law — that we believe disposes of this appeal.
 {¶ 35} As stated above, Section 74 of the City's Charter was enacted pursuant to Section 3, Article XVIII, which grants municipalities home rule authority to pass laws, provided they do not conflict with general laws. Therefore R.C. 9.481 prevails over the residency requirement only if R.C. 9.481 is a general law.
 {¶ 36} The court in Canton set forth a four-part test to determine what constitutes a general law for purposes of home-rule analysis: "[A] statute must (1) *Page 14 
be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." Id.
 {¶ 37} We find the decision in Lima to be persuasive on this issue, and we hold that R.C. 9.481 is not a general law because it does not meet the third and fourth prongs of the Canton general law test.
 {¶ 38} With respect to the third prong, the court in Akron held that "[s]ection 9.481 is an attempt by the General Assembly to circumvent the home rule authority of municipalities to maintain residency requirements for their employees." Akron, supra. The Lima court held that because the exceptions contained in R.C. 9.481 are exemptions for "volunteers" and employees who were required to respond to emergencies and disasters, R.C. 9.481 "failed to set forth police, sanitary, or similar regulations and only served to limit the legislative authority of municipalities."Lima, supra. In essence, the court held that the State has not demonstrated that municipal employees have a constitutional right to choose where one lives and demand employment from an unwilling employer. Id. See, also, Buckley v. City of Cincinnati (1980), 63 Ohio St.2d 42,406 N.E.2d 1106. Therefore, the court held that "prohibiting political subdivisions from requiring residency as a condition of employment is not an overriding state interest sufficient to meet" the third prong ofCanton's general law test. Lima, at ¶ 80. *Page 15 
 {¶ 39} The Lima court also held that R.C. 9.481 fails the fourth prong of the Canton general law test, and we agree. Specifically, the law does not prescribe a rule of conduct upon citizens generally since its plain language states: "[e]xcept as otherwise provided in division (B)(2) of this section, no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state." (Emphasis added.) On its face, R.C. 9.481 imposes a restriction on the conduct of political subdivisions, not on that of citizens generally; therefore, it fails to meet the fourth prong of theCanton general law test.
 {¶ 40} R.C. 9.481 cannot pass Canton's preemption test, having failed its third and fourth prongs; therefore, we sustain the City's third assignment of error.
 Assignment of Error II {¶ 41} "The trial court erred with its determination that R.C. 9.481
addressed a matter of statewide concern as the City's residency requirement is exclusively a matter of local self-government that does not affect the general public of the state as a whole more than it does the City's local inhabitants."
 {¶ 42} In its second assignment of error, the City argues that its residency requirement is a valid enactment of law as a matter of local self-government. The State agrees that the City acted as a matter of local self-government, as opposed to acting under its police powers. (See Appellee's brief, page 25.)
 {¶ 43} The second prong of the Canton test, if satisfied, supports a finding that the state statute supersedes a municipality's home rule authority. The second prong requires that "the ordinance is an exercise of police power, rather than of local self-government." *Page 16 
The difference in the positions of the parties lies in the fact that, under the City's theory, by acting as a matter of local government, it necessarily falls outside the second prong of the Canton test and, therefore, remains valid in the face of a conflicting state statute; while, under the State's theory, an ordinance that is an exercise of self-government places it outside the purview of Canton and, therefore, it must succumb to a conflicting state statute.
 {¶ 44} We agree with the City and with the holding in Am. Fin. Servs.Assn. v. City of Cleveland, 112 Ohio St.3d 170, 173, 2006-Ohio-6043,858 N.E.2d 776, that "[i]f an allegedly conflicting city ordinance relates solely to self-government, the analysis stops because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction."
 {¶ 45} Although we adopt the City's reasoning, having held that R.C. 9.481 is not a general law under the third and fourth prongs of theCanton test, we do not expressly accept the State's concession. Therefore, we find the City's second assignment of error moot.
 Assignment of Error I {¶ 46} "The trial court erred in not recognizing long standing precedent that municipal employee residency requirements do not deprive individuals of any fundamental rights. It is long standing Ohio law that there is no constitutional right to be employed by a municipality while living elsewhere."
 {¶ 47} In its first assignment of error, the City argues that, while individuals have a right to live where they choose, this right does not include the right to demand *Page 17 
employment from the government. There is ample case law in Ohio to support the City's contention. See Buckley, supra; Senn v. City ofCleveland, Cuyahoga App. No. 84598, 2005-Ohio 765; State ex rel. Fisherv. City of Cleveland, Cuyahoga App. No 83945, 2004-Ohio-4345. Indeed, the recent decisions in Lima, supra, and Akron, supra, lend additional support to this argument.
 {¶ 48} Having sustained the City's fifth and third assignments of error, we decline to explicitly sustain or overrule this assignment of error.
 Assignment of Error IV {¶ 49} "The trial court erred in holding that R.C. 9.481 does not violate section 26, Article II, Section 26 (sic) of the Ohio Constitution as the class of employee affected by the statute is arbitrarily and capriciously drawn."
 {¶ 50} Having held that R.C. 9.481 was not validly enacted, nor does it supersede Ohio's Home Rule Amendment, we do not need to determine whether it violates Article II, Section 26, the Uniformity Clause, of the Ohio Constitution. We do, however, struggle to accept the State's argument that R.C. 9.481 is uniform in its application when it carves out an exception for a category of volunteers, which includes paid part-time and temporary employees. Nonetheless, the City's fourth assignment of error is moot. *Page 18 
 Conclusion {¶ 51} The City's fifth and third assignments of error are sustained. The City's second and fourth assignments of error are moot in light of our disposition of the fifth and third assignments of error. Finally, we have declined to rule on the City's first assignment of error.
 {¶ 52} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants recover of said appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS (WITH SEPARATE OPINION); ANTHONY O. CALABRESE, JR., P.J., DISSENTS (WITH SEPARATE OPINION)
[1] At the time of the trial court's decisions, no appellate court had decided the issue now before us. Since these appeals were filed, both the Third and Ninth Districts have rendered opinions. See City of Limav. State, Third Appellate No. 1-07-21, 2007-Ohio-6419, and State v. Cityof Akron, Ninth Appellate No. 23660, 2008-Ohio-38.