OPINION
{¶ 1} Defendant-appellant, Michael A. Heimlich, appeals from a judgment of the Franklin County Court of Common Pleas granting plaintiff-appellee, Franklin County Prosecuting Attorney, summary judgment on appellee's complaint seeking to enjoin appellant from residing within 1,000 feet of a school premises pursuant to R.C. 2950.031's residency restrictions for certain sexually oriented offenders. Because no genuine issue of material fact exists and appellee is entitled to judgment as a matter of law, we affirm. *Page 2 
 {¶ 2} On August 24, 2005, appellant, represented by counsel, entered a guilty plea to one count of importuning in violation of R.C. 2907.07, a fifth-degree felony. The trial court sentenced appellant to three years of community control. Pursuant to stipulation by counsel, the trial court determined that appellant is not a habitual sex offender, but a sexually oriented offender. Accordingly, the trial court ordered appellant to register as a sex offender and register his residence address with the sheriff of the county in which he resides for a period of ten years.
 {¶ 3} In 2003, the Ohio General Assembly enacted R.C. 2950.031, effective July 31, 2003, which prohibits registered sex offenders from residing within 1,000 feet of a school premises. In 2005, the General Assembly amended the statute to accord county prosecutors the power to enforce the statute's provisions through a cause of action for injunctive relief. In July 2007, the General Assembly again amended the statute and recodified it as R.C. 2950.034. As the 2007 amendments are not material here, we analyze R.C. 2950.031 as in effect before the 2007 amendment and recodification.
 {¶ 4} On March 29, 2007, appellee filed a complaint against appellant pursuant to former R.C. 2950.031 seeking to enjoin him from residing at 303 South Yale Avenue, which appellee alleged is within 1,000 feet of a school premises, including Dana Elementary School ("Dana Elementary"). On May 11, 2007, appellant filed an answer in which he admitted that he resided at 303 South Yale Avenue and asserted defenses based upon alleged constitutional violations.
 {¶ 5} Appellee responded with a motion for summary judgment, filed January 22, 2008, supported by, inter alia, a certified copy of the trial court's entry on the underlying conviction and an affidavit from a deputy auditor in the Franklin County Auditor's Office, *Page 3 
Real Estate Division, stating that Dana Elementary is approximately 625 feet from 303 South Yale Avenue.
 {¶ 6} Appellant answered appellee's motion with a memorandum contra and cross-motion for summary judgment, raising four issues. Appellant first argued that the deputy auditor improperly utilized the straight line method to measure the distance from appellant's residence to Dana Elementary. Appellant also argued that the deputy auditor's testimony alone was insufficient to establish the distance between appellant's residence and the school premises. In addition, appellant contended that appellee failed to establish that Dana Elementary is a "school premises" for purposes of former R.C. 2950.031. Finally, appellant argued that R.C. 2950.031 violates his constitutional rights to travel, due process, and privacy.
 {¶ 7} In a decision filed May 9, 2008, the trial court struck appellant's cross-motion for summary judgment as untimely; however, the court considered the arguments presented as a timely memorandum contra. The court concluded that appellee established all the necessary elements of its case under R.C. 2950.031 and that the statute is constitutional. Accordingly, the trial court granted summary judgment to appellee.
 {¶ 8} By judgment entry filed May 22, 2008, the trial court ordered, adjudged, and decreed that appellant was in violation of R.C. 2950.034
(formerly R.C. 2950.031) because he was convicted of a non-registration-exempt sexually oriented offense or a child-victim oriented offense and resided within 1,000 feet of Dana Elementary. The trial court further permanently enjoined appellant from violating the provisions of R.C. 2950.034 (formerly 2950.031) and in particular from maintaining a residence at 303 South Yale Avenue. *Page 4 
 {¶ 9} Appellant has appealed, assigning the following errors:
 [1.] The trial court erred in granting the appellee's motion for summary judgment because the trial court used the wrong standard of measurement.
 [2.] The trial court erred in granting the appellee's motion for summary judgment because the appellee has not shown that Dana Elementary is a "school premises" as defined by statute and is therefore not entitled to judgment as a matter of law.
 [3.] The trial court erred in granting the appellee's motion for summary judgment because R.C. 2950.034 [formerly 2950.031] is unconstitutional and violates the appellant's due process rights under both the state and federal constitutions.
 {¶ 10} Appellant's three assignments of error contend that the trial court erred in granting appellee's motion for summary judgment. Accordingly, we set forth the familiar standard governing summary judgment. Appellate review of summary judgment is de novo. Helton v.Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Bank Corp. (1997),122 Ohio App.3d 100, 103. Summary judgment is proper only when the party moving for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ. R. 56(C); State exrel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements *Page 5 
of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ. R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party discharges its initial burden, the nonmoving party bears the burden of offering specific facts showing that there is a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ. R. 56(E);Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 12} Pursuant to Civ. R. 56(C), only certain evidence may be considered by the court when contemplating a motion for summary judgment. Specifically, the court may consider only timely filed "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ. R. 56(E). Supporting and opposing affidavits must be made on personal knowledge, must set forth such facts as would be admissible in evidence and must affirmatively demonstrate that the affiant is competent to testify to the matters stated in the affidavit. Civ. R. 56(E).
 {¶ 13} Former R.C. 2950.031(A) provided that "[n]o person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within *Page 6 
one thousand feet of any school premises." As such, appellant, a non-registration-exempt sexually oriented offender, is prohibited by R.C. 2950.031(A) from residing within 1,000 feet of any school premises.
 {¶ 14} Appellant's first assignment of error contends the trial court utilized the wrong standard of measurement in calculating the distance between appellant's residence and Dana Elementary. In particular, appellant contends the trial court improperly determined that the distance should be measured in a straight line. Appellant maintains that the distance should be measured along a reasonably navigable path. We note that former R.C. 2950.031(A) is silent as to how the distance between an offender's residence and a school premises is to be measured.
 {¶ 15} Appellee supported its motion for summary judgment with the affidavit of Anthony Frissora, a deputy auditor employed for over 15 years in the Real Estate Division of the Franklin County Auditor's Officer. (Frissora Affidavit ¶ 3-4). Frissora attested that he utilized a global imaging software ("GIS") tax map database maintained by the auditor's office to determine the distance between Dana Elementary and appellant's residence. He further stated that he is familiar with the technical specifications and capabilities of the GIS tax map database. (Aff. ¶ 5). He also testified that the GIS tax map database complies with the United States National Map Accuracy Standards and may be utilized to determine the distance between two parcels of property. (Aff. ¶ 6-7). Frissora also stated that the GIS tax map database may also be utilized to list all properties within a specified distance of an identified parcel of property. (Aff. ¶ 8). He further attested that the GIS tax map database can determine the distance between two points within a margin of error of two and one-half feet. (Aff. ¶ 8.) Utilizing the GIS tax map database, Frissora determined *Page 7 
that Dana Elementary is approximately 625 feet from appellant's residence at 303 South Yale Avenue. (Aff. ¶ 12.)
 {¶ 16} In State v. Franklin, 164 Ohio App.3d 758, 2005-Ohio-6854, the defendant was convicted of two counts of trafficking in cocaine. Both counts were enhanced because the transactions occurred within 1,000 feet of a school premises. At trial, the state presented the testimony of a police officer who stated that he utilized a GIS program to measure the distance between the school premises and the location where the drug transactions occurred. According to the officer, the GIS program calculated the distance between the two points at 762 feet.
 {¶ 17} A geographical information systems specialist employed by the city for over ten years also testified for the state. The specialist stated that one of the design functions of the software utilized by the police officer was to determine distances between two points. He further testified that the software was utilized extensively to measure distances and that he had in the past confirmed mechanically that the system was accurate to within three feet.
 {¶ 18} On appeal, the defendant argued that the state failed to prove that the offenses were committed within 1,000 feet of a school premises. More particularly, the defendant argued that proof that a drug offense occurred within 1,000 feet of a school could be established only by lay testimony of a police officer if the officer physically measured the distance with a measuring reel or automobile odometer and personally testified from personal experience of having done so. The defendant cited numerous cases employing these methods for determining distance from a school.
 {¶ 19} The court rejected the defendant's argument, noting that "there are other ways to determine the distance between two points, including use of a GIS." Id. at ¶ 10. *Page 8 
In particular, the court noted that "global imaging devices are widely used and generally considered to be reliable." Id. at ¶ 11, citing Geographic Information Systems: Coming to a Courtroom Near You (2005), 34 U. Colo. L.Rev. 11, 17. The court found that the state's evidence was sufficient to prove that the drug transactions occurred within 1,000 feet of a school premises. The court noted that the defendant had the opportunity to discredit or refute the state's evidence by calling into question the reliability or veracity of the computer software employed by the officer, but failed to do so.
 {¶ 20} In this case, appellee submitted proper Civ. R. 56(C) evidentiary materials, i.e., Frissora's affidavit, establishing that appellant's residence is located within 1,000 feet of Dana Elementary as calculated by a GIS tax map database used extensively to measure distance and which is accurate to within two and one-half feet. As theFranklin court determined, global imaging devices are reliable and widely utilized to measure distance. Appellant's submission of the Frissora affidavit thus satisfied its initial burden underDresher. The burden then shifted to appellee to submit evidentiary material demonstrating a genuine dispute over a material fact.Dresher.
 {¶ 21} Appellant did not submit any Civ. R. 56(C) evidentiary materials challenging use of the GIS tax map database as a method of measurement or the accuracy of the measurement obtained through its use. Furthermore, appellant failed to submit any Civ. R. 56(C) evidentiary materials establishing the distance as measured by the method he proposes. Although he contended that the relevant distance must be measured along a reasonably navigable path, he did not submit any Civ. R. 56(C) evidentiary materials establishing that such distance is greater than 1,000 feet. Accordingly, appellant failed to establish a genuine issue of material fact as to whether his residence is located within *Page 9 
1,000 feet of Dana Elementary; accordingly, appellee was entitled to summary judgment on this issue. The first assignment of error is overuled.
 {¶ 22} Appellant's second assignment of error contends that appellee failed to establish that Dana Elementary is a school premises for purposes of former R.C. 2950.031. As noted, former R.C. 2950.031(A) prohibits appellant, a non-registration-exempt sexually oriented offender, from establishing a residence or occupying a residential premises within 1,000 feet of any "school premises." As relevant here, "school premises" is defined in R.C. 2925.01(R)(1) as being "[t]he parcel of real property on which any school is situated[.]" "School" is defined, in pertinent part, as "any school operated by a board of education * * *." R.C. 2925.01(Q).[1] Appellant contends that appellee failed to provide evidence demonstrating that Dana Elementary is a school "operated by a board of education." The record belies appellant's contention. In his affidavit, Frissora attested that Dana Elementary is operated by the Columbus Board of Education. Appellant did not present any Civ. R. 56(C) evidentiary materials to the contrary, i.e., that Dana Elementary is not a school operated by a board of education. Accordingly, appellee was entitled to summary judgment on this issue. The second assignment of error is overruled.
 {¶ 23} Appellant's third assignment of error contends that former R.C. 2950.031(A) is unconstitutional because it violates substantive due process rights protected under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.[2] The Supreme Court of Ohio has held that "[t]he `due course of law' *Page 10 
clause of Section 16, Article I of the Ohio Constitution, has been considered the equivalent of the `due process of law' clause in theFourteenth Amendment." Direct Plumbing Supply Co. v. City of Dayton
(1941), 138 Ohio St. 540, 544. Accordingly, in the absence of an argument that our analysis under the state and federal constitutions should differ, we construe these provisions similarly.
 {¶ 24} Initially, we note that statutes enjoy a strong presumption of constitutionality. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel.Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." Id. at 147. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." City of Xenia v. Schmidt (1920), 101 Ohio St. 437, paragraph two of the syllabus. Accordingly, we commence our analysis with the strong presumption that former R.C. 2950.031 is constitutional.
 {¶ 25} Courts employ one of two tests in assessing the constitutionality of a statute under the Due Process Clause: strict scrutiny or rational-basis review. When a state enacts legislation that infringes fundamental rights, courts review such law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." Reno v. Flores (1993), 507 U.S. 292, 302,113 S.Ct. 1439. Where there is no fundamental right at issue, courts employ rational-basis review. Washington v. *Page 11 Glucksberg (1997), 521 U.S. 702, 720, 117 S.Ct. 2258. Under rational-basis review, a statute survives if it is reasonably related to a legitimate governmental interest. Am. Assoc. of Univ. Professors,Cent. State Univ. Chapter v. Cent. State Univ. (1999), 87 Ohio St.3d 55,58.
 {¶ 26} Accordingly, we must first determine whether former R.C. 2950.031(A) infringes upon a fundamental right. Appellant contends the statute infringes upon his fundamental rights "to property" and "to live where he wishes." (Appellant's brief, 6-7). Rights are fundamental in the substantive due process framework when they are "`deeply rooted in this Nation's history and tradition,'" Glucksberg, at 721, quotingMoore v. City of East Cleveland (1977), 431 U.S. 494, 503,97 S.Ct. 1932, and so "`implicit in the concept of ordered liberty,'" that "`neither liberty nor justice would exist if they were sacrificed.'" Id., quoting Palko v. Connecticut (1937), 302 U.S. 319, 325-26,58 S.Ct. 149.
 {¶ 27} The United States Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain liberty and privacy interests implicit in the Due Process Clause and the penumbra of constitutional rights. Id. at 720. These special liberty interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." Id. (Citations omitted). The Court has also determined that the Due Process Clause protects an individual's right to refuse unwanted lifesaving medical treatment. Id., citing Cruzan v. Dir., Missouri Dept. of Health (1990),497 U.S. 261, 278-79, 110 S.Ct. 2841. The Court, however, has been "`reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" Id., quoting Collins v. Harker Heights (1992),503 U.S. 115, 125, 112 S.Ct. 1061. The Court *Page 12 
explained that "`[b]y extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore `exercise the utmost care whenever we are asked to break new ground in this field,' ibid., lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court.'" Id., quoting Moore, at 502.
 {¶ 28} Appellant maintains that former R.C. 2950.031(A) impairs his fundamental "right to property." Appellant contends that the Ohio Constitution entitles all Ohioans to an inalienable right to acquire and possess property. Indeed, the Ohio Constitution provides that "[a]ll men * * * have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property * * *." Section 1, Article I, Ohio Constitution. Appellant also cites City of Norwood v.Horney, 110 Ohio St.3d 353, 2006-Ohio-3799, where the Supreme Court of Ohio stated that "[t]he rights related to property, i.e., to acquire, use, enjoy, and dispose of property, * * * are among the most revered in our law and traditions" and that "Ohio has always considered the right of property to be a fundamental right." Id. at ¶ 34, 38.
 {¶ 29} Initially, we note that appellant failed to raise this particular argument in the trial court. Generally, a litigant must raise any argument asserting a statute's unconstitutionality in the trial court. State v. Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 115. Failure to assert such an argument at the trial court level constitutes a waiver, and an appellate court is not required to consider it.State v. Mink, 101 Ohio St.3d 350, 2004-Ohio-1580, ¶ 101, citingState v. Awan (1986), 22 Ohio St.3d 120, syllabus. Also, as discussed below, this challenge lacks merit. *Page 13 
 {¶ 30} Appellant failed to submit any Civ. R. 56(C) evidentiary materials establishing that he owns the South Yale Avenue property. In his answer, appellant admitted only that he is "a resident" of the South Yale Avenue address. (Answer ¶ 3). Although he did assert in paragraph 16 that "[R.C.] § 2950.031 violates the Fifth Amendment Takings Clause as applied to former sex offenders who reside in homes they ow[n]," it is unclear whether such statement refers to appellant specifically or to sex offenders who own their homes generally. If appellant does not own the South Yale Avenue property, the injunction against him cannot impede any ownership rights therein.
 {¶ 31} In any event, although former R.C. 2950.031(A) prohibits appellant from residing within 1,000 feet of a school premises, the statute does not preclude him from owning, renting, or leasing a home within 1,000 feet of a school premises. Sexually oriented offenders are simply precluded from living within 1,000 feet of a school premises. Accordingly, the statute does not impair appellant's substantive property rights as enumerated in the Ohio Constitution.
 {¶ 32} We next consider appellant's claim that the statute impairs his fundamental right to "live where he wishes." Although the freedom to live where one wishes is certainly of utmost importance to any individual, it is not a fundamental interest entitled to the highest constitutional protection. In Doe v. Miller (C.A.8, 2005), 405 F.3d 700, the Eighth Circuit Court of Appeals addressed a sex offender residency restriction similar to former R.C. 2950.031(A) and refused to recognize a fundamental right to "live where you want." The court noted that such conclusion was consistent with its decision in Prostrollo v. Univ. ofS.D. (C.A.8, 1974), 507 F.2d 775, where the court stated that "`we cannot agree that the right to choose one's place of residence is necessarily a fundamental right.'" Miller, at 714, quotingProstrollo, at 781. The Miller court reasoned that "[t]his *Page 14 
ambitious articulation of a proposed unenumerated right ["to live where you want"] calls to mind the Supreme Court's caution that we should proceed with restraint in the area of substantive due process * * * ." Id. at 713-14, citing Glucksberg, at 720. Based upon the Supreme Court's admonition, the Miller court ultimately held that the Due Process Clause did not establish "a right to `live where you want' that requires strict scrutiny of a State's residency restrictions." Id. at 714.
 {¶ 33} Other courts considering residency restrictions similar to former R.C. 2950.031(A) have refused to recognize the right to live where one chooses as a fundamental right. In Graham v. Henry (Sept. 14, 2006), N.D. Okla. No. 06 CV 381 TCK FHM, the plaintiff alleged that his constitutional right to live with his wife was violated by a state statute that prohibited sex offenders from residing within a 2,000 foot radius of a school. The court held that the plaintiff was unlikely to demonstrate that this right was fundamental and thus deserving of heightened protection under the federal Due Process Clause. In so holding, the court noted that "[w]hile Supreme Court precedent indicates that individuals enjoy a fundamental right to personal choice in matters of family life, including the right to reside with a family unit of a person's choosing, Section 590 [the sex offender residence restriction law] does not impose on such right, as it does not dictate withwhom Plaintiff may live, but only where Plaintiff may live." Id. (citation omitted; emphasis sic). The court further noted that "courts have determined that there is no fundamental right to live where one pleases." Id., citing Weems v. Little Rock Police Dept. (C.A.8, 2006),453 F.3d 1010.
 {¶ 34} In State v. Seering (Iowa 2005), 701 N.W.2d 655, the Supreme Court of Iowa considered the constitutionality of a statutory prohibition against convicted sex offenders living within 2,000 feet of an elementary or secondary school or child care *Page 15 
facility. Seering's constitutional challenge was based, in part, upon freedom of choice in where an offender lives and under what conditions. The court held that "freedom of choice in residence is * * * not a fundamental interest entitled to the highest constitutional protection." Id. at 664. Similarly, in People v. Leroy (2005), 357Ill.App.3d 530, the court considered the constitutionality of an Illinois statutory prohibition against convicted sex offenders living within 500 feet of a playground or a facility providing programs or services exclusively directed toward persons under the age of 18. Leroy asserted that the statute violated his fundamental constitutional right to live with his mother and enjoy her support within 500 feet of a school. The court concluded that "no such fundamental right exists." Id. at 534.
 {¶ 35} Appellant has thus not established that the right to "live where he wishes" is "`deeply rooted in this Nation's history and tradition'" or "`implicit in the concept of ordered liberty,' such that `neither liberty nor justice would exist if [it] were sacrificed.'"Glucksberg, at 720-21 (citations omitted). Accordingly, appellant has not established that the right to "live where he wishes" is a fundamental right under either the federal or state Due Process Clause requiring strict scrutiny of Ohio's residency restriction. Appellant's interest in living "where he wishes" is, therefore, entitled only to rational-basis review.
 {¶ 36} "Under the rational basis standard, we are to grant substantial deference to the predictive judgment of the General Assembly." State v.Williams (2000), 88 Ohio St.3d 513, 531, citing Turner Broadcasting Sys.v. Fed. Communications Comm. (1997), 520 U.S. 180, 195, 117 S.Ct. 1174,1189. "The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before a [substantive due process] challenge will be upheld." Id., citing Heller v. Doe (1993),509 U.S. 312, 320, 113 S.Ct. 2637, 2642. *Page 16 
 {¶ 37} There is no appellate authority within the state of Ohio bearing directly on the question before us, i.e., whether the residency restriction in former R.C. 2950.031(A) is rationally related to a legitimate governmental interest. However, in State v. Randall (2001),141 Ohio App.3d 160, the Eleventh District Court of Appeals considered a closely related topic, i.e., the constitutionality of sexual offender registration and notification laws, and the court's analysis provides guidance here. The court upheld the registration and notification requirements of R.C. Chapter 2950 after consideration of both due process and equal protection challenges. Specifically, the court held that the General Assembly had a legitimate state interest when it enacted R.C. Chapter 2950:
 R.C. Chapter 2950 does not offend substantive due process and equal protection as the statute is rationally related to a legitimate state interest, and there exist reasonable grounds for distinguishing between sexual predators and other offenders. * * * The legislature declared that its intent was to `protect the safety and general welfare of the people of this state.' R.C. 2950.02(B). Assuring public protection from sex offenses is a legitimate state interest. * * * Further, the legislature has concluded that sex offenders pose a high risk of recidivism and that the registration and notification requirements `clearly advance the legislature's stated goal of protecting the public.' Id. Because reasonable grounds exist for distinguishing between sexual predators and other offenders, R.C. Chapter 2950
does not violate the Equal Protection and Due Process Clauses.
Id. at 163.
 {¶ 38} The Randall court's analysis applies equally to a due process challenge to the residency restriction. There is no question that the state has a legitimate interest in protecting children from known sexually oriented offenders. The registration and notification laws, as well as the laws compelling a measurable distance between children and sex offenders, bear a rational relationship to this legitimate state interest and set forth a reasonable method of furthering that interest. As noted by the Leroy court, "it is reasonable to believe that a law that prohibits child sex offenders from living within [a *Page 17 
measurable distance] of a school will reduce the amount of incidental contact child sex offenders have with the children attending that school and that consequently the opportunity for the child sex offenders to commit new sex offenses against those children will be reduced as well." Id. at 535. The law requiring sexually oriented offenders to reside a reasonable distance from a place where children assemble withstands constitutional scrutiny for the same reasons that registration and notification laws have withstood scrutiny. They are facially valid statutes reasonably designed to bring some measure of comfort to the citizens of Ohio.
 {¶ 39} We are unpersuaded by appellant's argument that the residency restriction does not further the state's legitimate interest in protecting children and society from repeat sexually oriented offenders. Appellant maintains that empirical evidence demonstrates that the residency restriction does not address the majority of child sex abuse cases because those cases involve relatives or acquaintances. Appellant argues that the residency restriction does not hamper sexually oriented offenders from abusing family members and does not even restrict sexually oriented offenders from living with their previous victims. However, "`a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.'" Am. Assoc. of Univ. Professors, supra, at 58, quotingFed. Communications Comm. v. Beach Communications, Inc. (1993),508 U.S. 307, 315, 113 S.Ct. 2096, at 2102. The residency restriction in former R.C. 2950.031(A) clearly bears a rational relationship to the state's legitimate interest in protecting children from identified sexually oriented offenders.
 {¶ 40} For all these reasons, we hold that former R.C. 2950.031(A) is not in conflict with the Due Process Clauses of the United States and Ohio Constitutions. Accordingly, *Page 18 
appellee was entitled to summary judgment on this issue. The third assignment of error is overruled.
 {¶ 41} Having overruled appellant's three assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
FRENCH, P.J., and McGRATH, J., concur.
[1] Former R.C. 2950.01(R) provides that "`[s]chool' and `school premises' have the same meanings as in section 2925.01 of the Revised Code."
[2] Appellant has apparently abandoned his arguments pertaining to any alleged violations of his constitutional rights to travel and privacy. *Page 1