[Cite as *Mayle Bingo Co., L.L.C. v. Ohio Dept. of Pub. Safety*, 2020-Ohio-1087.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Mayle Bingo Co., LLC et al.,                    :

        Plaintiffs-Appellants,          :

                                         No. 18AP-760

v.                                              :           (C.P.C. No. 16CV-83)

Ohio Department of Public Safety et al.,        :           (REGULAR CALENDAR)

        Defendants-Appellees.           :

---

D E C I S I O N

Rendered on March 24, 2020

---

**On brief**: *David A. Goldstein*; *Yavitch & Palmer Co., L.P.A.*, and *Stephen E. Palmer*; *Kurt O. Gearhiser*, Amicus Curiae, for appellants.

**On brief**: *Dave Yost*, Attorney General, *Joseph E. Schmansky*, and *Anthony J. Garcia*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Blue Sky Games, LLC ("Blue Sky"), and Mayle Bingo Company, LLC ("Mayle") (collectively "appellants"), plaintiffs-appellants, appeal from a judgment of the Franklin County Court of Common Pleas in which the court denied their motion for summary judgment and granted the motion for summary judgment filed by the Ohio Department of Public Safety ("ODPS") and the Ohio Attorney General Dave Yost, defendants-appellees (collectively "appellees").

{¶ 2} Blue Sky is a software developer that distributes software to operators who install software on gaming machines. Mayle is one of the operators that installs the software

onto machines, including in Ohio. The software at issue here is Blue Sky Games Version 67 ("Version 67"). In Version 67, game play is generally as follows. Users choose one of five games to play. The player then initiates a mandatory preview function which reveals the outcome of the next play by displaying the number of credits the user will win or lose depending on the number of credits the player chooses to play. The outcomes are produced by a "pseudo random number generator," which could include as many as 60,000 to 75,000 possible outcomes or "prizes," with potentially an infinite number possible. The user may then choose to deposit cash in the machine to play at various credit levels, or the user may choose not to play. The user may also choose to deposit cash into the machine before initiating the mandatory preview. When the user is finished playing, the user receives a voucher, redeemable for cash, for the remaining credits.

{¶ 3}   On January 5, 2016, appellant filed a declaratory judgment complaint seeking a declaration that Version 67 is not a "slot machine" or "game of chance," as defined by R.C. 2915.01, and that 2915.01 is unconstitutionally vague because it requires a factfinder to examine the mental element as to why someone might play Version 67. On May 18, 2018, appellants and appellees filed their respective motions for summary judgment. On September 11, 2018, the trial court issued a decision and entry in which the court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. Appellants appeal the judgment of the trial court, asserting the following two assignments of error:

> [I.]  The Trial Court erred by Granting Appellees['] Motion for Summary Judgment and Denying Appellants['] Motion for Summary Judgment.
>
> [II.]  The Trial Court Erred by Finding R.C. 2915 *et. seq.* was not Unconstitutionally Vague.

{¶ 4}   Appellants argue in their first assignment of error the trial court erred when it granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio

St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 5} When seeking summary judgment on grounds the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 6} A declaratory judgment action is a civil action and provides a remedy in addition to other legal and equitable remedies available. *Victory Academy of Toledo v. Zelman*, 10th Dist. No. 07AP-1067, 2008-Ohio-3561, ¶ 8, citing *Aust v. Ohio State Dental Bd.*, 136 Ohio App.3d 677, 681 (10th Dist.2000). R.C. Chapter 2721, the Declaratory Judgments Act, is remedial in nature; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations and it is to be liberally construed and administered. *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 134 (1990), citing *Radaszewski v. Keating*, 141 Ohio St. 489, 496 (1943).

{¶ 7} R.C. 2721.03 provides that any person "whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] rule" may have determined "any question of construction or validity arising under the instrument, constitutional

provision, statute, [or] rule * * * and obtain a declaration of rights, status, or other legal relations under it." Thus, the construction and interpretation of statutes is a recognized function of declaratory action. *Town Ctrs. Ltd. Partnership v. Ohio State Atty. Gen.*, 10th Dist. No. 99AP-689 (Apr. 4, 2000). The essential elements for declaratory relief are: (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Aust* at 681.

{¶ 8} In appellants' complaint for declaratory relief in the present case, appellants seek in Count I a declaration that a Version 67 device is not a "slot machine" as defined in R.C. 2915.01(QQ) and, thus, is legal under Ohio law.

{¶ 9} R.C. 2915.01(QQ)(1)(a) and (b) define "slot machine" and provide as follows:

> (QQ)
>
> (1) "Slot machine" means either of the following:
>
> (a) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player who gives the thing of value in the hope of gain;
>
> (b) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player to conduct bingo or a scheme or game of chance.

{¶ 10} R.C. 2915.01 defines "scheme of chance" and "game of chance" as follows:

> (C) "Scheme of chance" means a slot machine * * * in which a participant gives a valuable consideration for a chance to win a prize * * *. "Scheme of chance" includes the use of an electronic device to reveal the results of a game entry if valuable consideration is paid, directly or indirectly, for a chance to win a prize.
>
> * * *
>
> (D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

{¶ 11} R.C. 2915.02(A)(2) prohibits individuals from knowingly engaging "in conduct that facilitates any game of chance conducted for profit or any scheme of chance." R.C. 2915.02(A)(7) prohibits any individual from acquiring, possessing, controlling, or operating any gambling device for purposes of violating R.C. 2915.02.

{¶ 12} Here, appellants argue that: (1) Version 67 is not a game of chance because a player does not have to give anything of value to see the outcome of his or her game due to the mandatory preview function, (2) Version 67 is not a slot machine or scheme of chance because, with the mandatory preview function, a player need not give anything of value until after he or she has seen the outcome of the game, and (3) Version 67 is not a game of chance or scheme of chance because the player does not necessarily play in the hope of gain, given the player already knows the outcome of the game via the mandatory preview function.

{¶ 13} The trial court framed the issue before it as follows:

> The issue before this Court is whether Version 67 games are a "scheme of chance" or "game of chance" as defined in R.C. 2915.01(C) or (D), and whether they are "slot machines" in violation of R.C. 2915.01(QQ). If Version 67 games are considered either of the above, then Defendants are entitled to summary judgment.

(Footnote omitted.) (Decision at 6.)

{¶ 14} The court then determined that the gaming machines with Version 67 installed are: (1) mechanical, electronic, video, or digital devices, and (2) capable of accepting anything of value, directly or indirectly, from or on behalf of any player who gives the thing of value. Thus, the court found the machines constituted both a "scheme of chance" and a "slot machine," as defined under R.C. 2915.01, respectively. The court found that the outcome of the games with Version 67 installed are largely determined by chance, and the pseudo random number generator does not mitigate the large impact of chance associated with Version 67 games. The court also determined that the player of a game under Version 67 has a "hope of gain," because players put money into the machine and each play of each game either earns or loses credits, which equal money, which equals gain. Furthermore, the court held that devices with Version 67 are "slot machines," and the preview feature does not allow for continuous play within the game should the player opt

out of said play after having previewed the result. After having viewed the preview, a player can only play or walk away. The purpose of continuing to play, after having previewed a negative outcome, is the hope of eventual gain from the next play. The court called the preview feature a "facade" to take an otherwise illegal game outside the scope of R.C. 2915.01 et seq.

{¶ 15} After reviewing the evidence, we agree with the trial court that machines with Version 67 installed are "slot machines" pursuant to R.C. 2915.01(QQ)(1)(a), which, as explained above, defines a slot machine as (1) any mechanical, electronic, video, or digital device, (2) that is capable of accepting anything of value directly or indirectly, (3) from or on behalf of a player, (4) who gives the thing of value in the hope of gain. These elements are satisfied here.  It is beyond dispute that the devices upon which Version 67 are played are mechanical, electronic, video, or digital devices. The devices also are clearly capable of accepting things of value from a player. Jeffery Mayle, the owner of Mayle Bingo and partial owner of Blue Sky, and Nicola Farley, an engineering consultant and appellants' expert, testified that money must be inserted to play the machine. The money is converted into credits. After play is over, the player receives a voucher for any remaining credits that the player then exchanges for money.

{¶ 16} Furthermore, the evidence supports the trial court's finding that the players have a "hope of gain." In their complaint for declaratory judgment, appellants defined "hope" as "to want something to happen or be true and think it could happen or be true" and "gain" as "something wanted or value that is gotten * * * especially money gotten through some activity or process." However, utilizing appellants' definitions, we find a player using a Version 67 machine has a hope of gain. As the trial court found, the hope of gain can be discerned from the circumstances of the game play itself. Appellants claim that players may choose to play Version 67 for a number of reasons that do not involve a hope of gain, i.e., entertainment, to pass time, to socialize. However, such an argument could be made about any type of gambling and does not advance appellants' position. Although there could hypothetically be players who play Version 67 for reasons other than a hope of gain, the nature and method of game play fundamentally involves the hope of accumulating credits so the player can continue to play the game for a chance to win more credits. The

fact that players put money into the machine with the only result of each play being a gain or loss of credits, and nothing else, demonstrates that the players seek gain.

{¶ 17} The mandatory preview does not remove the hope for gain. Although the player may still proceed to play despite seeing that he or she will not win the next play based on the mandatory preview, the reason the player proceeds to play despite knowing the negative outcome for the next play is that the player hopes to obtain a positive gain in the play after the negative play. The goal of playing the game is to seek an overall gain at the conclusion of play, even though the immediately next play may be known to have a negative outcome. It is this hope of an overall gain that initially attracts the player to Version 67. Any "gain" is a real financial gain, too, in that players put money into the machine and the machine issues vouchers with the net credits that are redeemable for cash after play is ended. Therefore, we find that a device with Version 67 installed is a "slot machine" under R.C. 2915.01(QQ)(1)(a), insomuch that they are a mechanical, electronic, video, or digital device that is capable of accepting something of value, directly or indirectly, from or on behalf of a player who gives the thing of value in the hope of gain.

{¶ 18} In addition, we agree with the trial court that the outcome of Version 67 games is largely determined by chance. Although appellants would urge the pseudo random number generator eliminates the element of chance, in that the player knows the outcome before he or she plays the next game, we disagree. According to Branislav Rodojcic, the engineer who designed Version 67, Version 67 reveals results using a pseudo random number generator that contains a finite pool of prizes for each game, and as a prize is won, it is removed from the pool. Once the finite set is exhausted, the pool resets. Rojojcic explained in his deposition that the outcomes are determined by a mathematical, statistical distribution in which certain events are more likely to happen or less likely to happen. The player does not know which or how many prizes remain in the pool. Once the finite pool is empty, it resets.

{¶ 19} However, as the trial court concluded, this pseudo random number generator does not eliminate the large element of chance. The results are determined and prizes won by random selection according to the pseudo random number generator, and the player has no control over which prizes are revealed and when. Practically speaking, despite the fact that the prizes are finite and defined, the results of each play of the game are randomly

revealed without any observable order or cause. Thus, the mandatory preview function does not eliminate chance; in fact, it has no effect on chance. The ultimate outcome, taken from the pool of outcomes or prizes, is still randomly generated based upon chance.

{¶ 20} Furthermore, the fact the outcome of the next play is revealed after a player activates the mandatory preview function does not render the game a "no-chance" game, as appellants claim. Game play technically commences the moment the player interacts with the game and activates the preview function. It is only after this initial engagement with the game that the outcome is revealed. Chance pre-exists the revelation of the outcome and resides in the window between the time the player first engages the game and when the outcome of the next play is revealed through the mandatory preview function. A player activates the mandatory preview hoping for a gain, and the outcome is largely determined by chance. Thus, we reject this "no-chance" argument.

{¶ 21} For the foregoing reasons, we find the trial court did not err when it granted summary judgment to appellees and denied appellants' motion for summary judgment. Devices with Version 67 installed are "slot machines," "games of chance," and "schemes of chance" under Ohio law. Appellants' first assignment of error is overruled.

{¶ 22} Appellants argue in their second assignment of error the trial court erred when it found R.C. 2915.01 et seq. was not unconstitutionally vague. Appellants assert the trial court erred when it found the term "in the hope of gain" not to be unconstitutionally vague. " 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *State ex rel. O'Brien v. Heimlich*, 10th Dist. No. 08AP-521, 2009-Ohio-1550, ¶ 24, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. " 'A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality.' " *O'Brien* at ¶ 24, quoting *Dickman* at 147. The party alleging a statute is unconstitutionally vague must prove that assertion beyond a reasonable doubt in order to prevail. *State v. Anderson*, 57 Ohio St.3d 168, 171 (1991).

{¶ 23} " 'Under the vagueness doctrine, statutes which do not fairly inform a person of what is prohibited will be found unconstitutional as violative of due process.' " *State v.*

*Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 14, quoting *State v. Reeder*, 18 Ohio St.3d 25, 26 (1985), citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926). "[A]ny statute which 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute' is void for vagueness." *State v. Tanner*, 15 Ohio St.3d 1, 3 (1984), quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). Yet, " '[i]mpossible standards of specificity are not required. * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " *Reeder* at 26, quoting *Jordan v. De George*, 341 U.S. 223, 231-32 (1951).

{¶ 24} In the present case, appellants argue that the phrase "in the hope of gain," as used in R.C. 2915.01 et seq. is unconstitutionally vague, as it is impossible for an ordinary person of reasonable intelligence to know why a player is motivated to play a Version 67 game at any particular time. Appellants point out the trial court admitted it cannot look into the mind of another person to determine his or her intent; thus, appellants claim a court must rely upon pure speculation as to why someone plays a Version 67 game. Furthermore, appellants contend there is no hope of gain for people playing Version 67 games because the outcome of the game is known with certainty before the participant actually plays the game. Thus, appellants assert the participants must be playing Version 67 due to other motivations, such as passing time if bored, the social aspect, or entertainment. Appellants claim that if a player knows whether the next play will win or lose, the player clearly must be playing the game for a reason other than the hope of gain.

{¶ 25} The trial court held that the phrase "hope of gain" was not impermissibly vague. The court presented definitions of "hope" and "gain," although such is not at the heart of appellants' present argument on appeal. As appellants argue, the trial court agreed it could not look into the mind of another person to determine intent, but the court found it is axiomatic that intent is determined by facts and circumstances. The court explained that Version 67 requires a person to put money into a machine to play a game whose outcome is determined by chance, and the only outcome of each play is to win or lose credits (money). The court found a reasonable person could infer the player is playing the game with the hope of winning money, even if the player is required to preview the outcome of the next play.

{¶ 26} We agree with the trial court's analysis. Insomuch as appellants' constitutionality argument rests upon their contention that the mandatory preview function eliminates any "hope of gain," we have already found the Version 67 devices are played by people with the hope of gain. Furthermore, appellants' argument that the "hope of gain" element requires the court to speculate as to a player's mental state ignores the well-established tenet that intent can be determined by the facts and circumstances. *See State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus (intent may be inferred from the circumstances). We already found above that, here, the hope of gain could be discerned from the circumstances of game play itself. The nature and method of game play fundamentally involve the hope of accumulating credits so that the player can continue to play the game for a chance to win more credits. The fact that players put money into the machine with the only result of each play being a gain or loss of credits, and nothing else, demonstrates that players engage Version 67 machines with the hope of gaining credits, which are redeemable for money. Whether they are hoping to gain credits for underlying social or entertainment reasons does not detract from the fact that it is a gain they ultimately seek. For these reasons, we find the phrase "in the hope of gain," as used in R.C. 2915.01 et seq., is not unconstitutionally vague. Therefore, appellants' second assignment of error is overruled.

{¶ 27} Accordingly, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____